UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

===================================================

THE CHILDREN FIRST FOUNDATION,
INC., a New York non-profit organization,

                                        Plaintiff,


          -v.-                                          1:04-CV-0927
                                                        (NPM)

RAYMOND P. MARTINEZ, individually,
DAVID J. SWARTZ, in his official capacity
as Commissioner of the New York
Department of Motor Vehicles; JILL A.
DUNN, individually; NEAL SCHOEN, in his
official capacity as Deputy Commissioner
and Counsel for the New York Department
of Motor Vehicles; GEORGE E. PATAKI,
individually; and ELIOT SPITZER in his
official capacity as Governor of the State
of New York,

                                        Defendants.

===================================================

APPEARANCES:                            OF COUNSEL:


ALLIANCE DEFENSE FUND                   BRIAN W. RAUM
Attorney for Plaintiff
15100 N. 90th Street
Scottsdale, AZ 85260


ALLIANCE DEFENSE FUND                   JAMES M. JOHNSON
Attorney for Plaintiff
401 Market Street, Suite 900
Shreveport, LA 71101


ALLIANCE DEFENSE FUND                   JEFFREY A. SHAFER
Attorney for Plaintiff

801 G Street NW, Suite 509
Washington, D.C. 20001

HISCOCK & BARCLAY, LLP        LINDA J. CLARK
Attorneys for Jill Dunn, individually    MICHAEL J. GRYGIEL
50 Beaver Street, Fifth Floor
Albany, NY 12207-2830

HOUGUET, NEWMAN LAW FIRM    IRA J. LIPTON
Attorneys for George Pataki, individually  ELIZABETH A. MUSELLA
10 East 40th Street                 LAURA M. MIDWOOD
New York, NY 10016

HARRIS BEACH PLLC           MARK J. MCCARTHY
Attorney for Raymond Martinez,
 individually
677 Broadway, Suite 1101
Albany, NY 12207

HON. ANDREW M. CUOMO,      SENTA B. SIUDA
 Attorney General for the State of   Assistant Attorney General
 New York
Attorney for Eliot Spitzer, David J.
 Swartz, and Neal Schoen in their
 official capacities
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204-2455

Neal P. McCurn, Senior District Judge

### *MEMORANDUM, DECISION AND ORDER*

### *I.    Introduction*

       Presently before the court are objections to Magistrate Judge Treece's

August 3, 2007 Memorandum, Decision and Order granting in part and denying in part defendant Jill A. Dunn's ("Dunn") motion to amend her answer.  See Dkt. No. 128 (hereinafter "the MDO").  By her motion, Dunn sought to amend her answer to assert as affirmative defenses that (1) plaintiff's amended complaint is barred by the government speech doctrine, and (2) plaintiff's amended complaint is barred, and Dunn is immune, by the Establishment Clause of the First Amendment to the United States Constitution.  Plaintiff, Children First Foundation, Inc., ("CFF" or "plaintiff") opposed Dunn's motion, arguing that it is untimely and will prejudice CFF, and that her proposed affirmative defenses are futile.  Judge Treece held that Dunn's delay in seeking to amend her answer was not in bad faith, nor did the delay advance any untoward prejudice for CFF.  (Neither CFF nor Dunn object to this portion of the MDO.)  Judge Treece further held that it would be futile for Dunn to assert the government speech doctrine as an affirmative defense, thereby denying her motion in that regard.  On the other hand, Judge Treece granted Dunn's motion insofar as he held that it would not be futile for her to assert an Establishment Clause affirmative defense.

These timely objections to Judge Treece's order followed.  Plaintiff objects to so much of the order that granted Dunn's motion to amend her answer with an Establishment Clause affirmative defense.  Dunn opposes this objection, and plaintiff replies.  Dunn objects to so much of Judge Treece's order that denies her motion to amend her answer with a government speech doctrine affirmative defense.  Plaintiff opposes this objection, and Dunn replies.  The remaining parties are silent regarding the aforementioned objections, except insofar as defendant Pataki, by attorney declaration, notes his support for Dunn's objection and opposition to plaintiff's objection.  See Decl. of Ira J. Lipton, Sept. 10, 2007, Dkt.

2

No. 139.  The court heard oral argument regarding the pending objections on September 25, 2007 in Syracuse, New York.  Decision was reserved.

## II.    *Procedural Background*

This civil rights action was commenced in August 2004 by plaintiffs CFF and Elizabeth Rex, director of CFF, alleging violation of the rights to freedom of speech and assembly, due process, and equal protection under the United States Constitution and violation of the right to freedom of speech under the New York State Constitution.  Plaintiffs sought declaratory and injunctive relief as well as damages.  Defendants, Raymond Martinez ("Martinez"), sued individually and in his official capacity as Commissioner of the New York Department of Motor Vehicles ("DMV"); Jill Dunn, sued individually and in her official capacity as the Deputy Commissioner and Counsel for the DMV; Eliot Spitzer, sued individually and in his official capacity as Attorney General of the State of New York ("Spitzer"); and George Pataki, sued individually and in his official capacity as then Governor of the State of New York ("Pataki"), filed a pre-answer motion to dismiss the entire complaint.  At the time this court decided the motion to dismiss, each defendant was represented by the New York State Attorney General.

After hearing oral argument regarding the motion to dismiss, this court issued a bench order granting the motion in part based on stipulation by plaintiffs, thereby dismissing all claims by plaintiff Elizabeth Rex, the freedom of assembly claim, and the claims for damages against the defendants in their official capacities.  See Transcript of Oral Argument at 71:5-12, Children First Foundation, Inc. v. Martinez, 04-CV-927 (Dkt. No. 17) (hereinafter "Tr.").  The court went on to deny defendants' motion to dismiss the remaining claims, citing the simplified pleading standard of the Federal Rules of Civil Procedure and

noting that defendants had not met their heavy burden thereunder to show that "no relief could be granted under *any* set of facts that could be proved consistent with the allegations."  Tr. 71:13-72:12, quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S.Ct. 992, 998 (2002) (emphasis added).  Upon query for clarification by defense counsel, the court stated that it was not treating the motion to dismiss based on qualified immunity because the allegations in the pleadings did not support it, but that defendants are entitled to raise the defense again on a motion for summary judgment.  See Tr. 75:11-76:17.

Thereafter defendants filed both a motion for reconsideration with this court and an appeal of this court's decision on the motion to dismiss with the Court of Appeals for the Second Circuit.  This court denied defendants' motion for reconsideration, noting that they failed to overcome the "formidable hurdle" faced by movants seeking dismissal on qualified immunity grounds via a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Dkt. No. 31. Shortly thereafter, defendants appealed the denial of their reconsideration to the Court of Appeals for the Second Circuit.

The Second Circuit dismissed both appeals by summary order, finding that because facts supporting the defense of qualified immunity do not appear on the face of the complaint, said defense cannot be determined as a matter of law, and therefore, the court lacks appellate jurisdiction.  See Children First Found., Inc. v. Martinez, 169 Fed. Appx. 637, 639, 2006 WL 544502, at *1(2d Cir. 2006). Defendants' appeals were dismissed accordingly.

A few months later, after stipulation by all parties, plaintiffs amended their complaint to comport with this court's ruling on the Rule 12(b)(6) motion, eliminating Elizabeth Rex as a plaintiff, removing the freedom of assembly claim,

and withdrawing the claims for damages against the defendants in their official capacities.  In addition, the freedom of speech claim under the New York Constitution is absent from the First Amended Complaint (hereinafter "Amended Complaint").[1]  Defendant Martinez, who is no longer Commissioner of the DMV, is now named in his individual capacity only, and Nancy Naples is substituted as Commissioner, sued in her official capacity.  The Attorney General for the State of New York, then Eliot Spitzer, was eliminated from the Amended Complaint.[2]  CFF, as the sole remaining plaintiff, alleges claims of violation of its right to freedom of speech, due process, and equal protection under the United States Constitution.  Also included are newly pled facts regarding events which occurred subsequent to the filing of this lawsuit.  While copies of the correspondence between the parties commencing July 2004 have been added as exhibits to the Amended Complaint, copies of correspondence through March 2004, which were included as exhibits to the original complaint, have been eliminated.

Shortly after CFF amended its complaint, defendants collectively filed an answer.  At some point within the following six months, Dunn, who continually asserted that her representation by the Attorney General posed a conflict of

---

[1] In a footnote, Judge Treece states that the First Amended Complaint, at Paragraph A of the Prayer for Relief,  includes a freedom of speech claim under the New York Constitution.  See Children First Found., Inc. v. Martinez, 01-CV-927 (N.D.N.Y. Aug. 3, 2007) (Dkt. No. 128).  At oral argument, plaintiff confirmed that no such claim currently exists.

[2] Judge Treece recently issued an Order upon stipulation by all parties amending the caption as follows:  David J. Swartz is substituted as the Commissioner of DMV, and is named in his official capacity only; Neal Schoen is substituted as Deputy Commissioner and Counsel for the DMV, and is named in his official capacity only; Jill Dunn is named solely in her individual capacity; Eliot Spitzer is named solely in his official capacity as Governor of the State of New York; and the Attorney General is eliminated as a named defendant.  See Dkt. No. 149.

interest, was finally given permission to, and subsequently did retain separate counsel to represent her in her individual capacity only.  Dunn then made a motion to amend her complaint, which is the subject of the MDO, the objections to which are presently before this court.

### III.    Factual Background

New York State law enables the Commissioner of the DMV to issue special number license plates, and to promulgate regulations in relation thereto.  N.Y. VEH. & TRAF. LAW § 404(1) (McKinney 2002).  One category of special number plates, known as "Picture Plates" or "logo plates," has a picture or logo next to the plate number.  There are several sub-categories of Picture Plates including "Organizations and Causes."  Currently, there are fifty-nine available Picture Plates under the Organizations and Causes sub-category, of which twenty were authorized by legislative action.  See §§ 404-b through 404-u.  Otherwise, the procedure for the application for and issuance of a Picture Plate is purely within the discretion of the Commissioner and is not governed by statute or regulation.

An organization will initially qualify for a Picture Plate if it (1) is a non-profit organization incorporated in New York, (2) has a sponsoring agency or organization as the main point of contact, and (3) pays a $5000 deposit and agrees same will be refunded upon the occurrence of one of two possible alternative circumstances.  If such an organization requests information from the DMV about developing a Picture Plate, the DMV issues a "custom plate development kit" which sets forth the application and issuance process in some detail.  The kit does not include a time frame within which an application must be approved or denied, nor does it set forth any guidelines, objectives, or prohibitions against the use of any logo, slogan, phrase, or message on a Picture Plate.

6

Plaintiff CFF is a non-profit organization incorporated in New York State. CFF's purpose is "to raise funds and awareness to promote and support adoption as a positive choice for women with unwanted pregnancies or newborns in ... New York, New Jersey and Connecticut[]." Am. Compl. ¶ 31.  CFF utilizes the phrase, "Choose Life" as an integral part of its corporate identity within its official logo, Internet domain name, legal alternate name, and toll free telephone and facsimile numbers.  Its official corporate logo is "a yellow sun behind the faces of two smiling children that are drawn as if in crayon by a child, and beneath them, the words "Choose Life" which appear also as if scrawled in crayon by a child."  Am. Compl. ¶ 33a.

CFF requested and received from the DMV a "custom plate development kit" in September 2001.  On December 28, 2001, CFF submitted an application for a Picture Plate, which satisfied all of the relevant criteria set forth in the development kit.  Two months later, then Commissioner Martinez denied CFF's application in writing, stating that a similar request was denied by the DMV in 1998.  However, Martinez told one witness that CFF's Picture Plate was going to be denied because it was "too political and controversial."  Am. Compl. ¶ 46.  In response to a request for further explanation by CFF, then Deputy Commissioner and Counselor Dunn stated by letter that CFF's application was rejected because "the message is patently offensive and could provoke outrage from members of the public."  Am. Compl. ¶ 51.  Further, in response to a Freedom of Information Law request for copies of all applications regarding the Picture Plate program, the DMV provided CFF with a copy of the aforementioned 1998 request for a "Choose Life" plate and its accompanying denial letter, which explains that the State of New York has a "policy not to promote or display politically sensitive

messages" on its license plates, and that the application for a "Choose Life" plate would be denied so that New York "could avoid 'a plate advocating politically sensitive and emotionally charged issues.'" Am. Compl. ¶ 59.

In October 2003, CFF submitted a revised Picture Plate design which included a tagline change from "Choose Life" to "FUND-ADOPTION.ORG" but also included CFF's corporate logo.[3]  Having received no response to its revised application, CFF gave then Governor Pataki and then Attorney General Spitzer copies of the application materials.  Martinez rejected the application in writing on March 31, 2004, reiterating Dunn's earlier explanation regarding the DMV's denial of CFF's original application.

On July 26, 2004, CFF again proposed an updated Picture Plate design with its corporate logo and domain name, "SafeHavens-Adoption.org" or alternatively, "NYChoose-Life.org."  The next day, Dunn verbally communicated to CFF's president that the plate would be approved as a "membership only" plate.  Within a week, Dunn notified CFF by facsimile that Martinez suspended the custom plate program, and therefore CFF had no application that was ripe for consideration.  CFF believes that Pataki was informed regarding its various Picture Plate applications and contributed to the final rejection of same by Martinez.

On August 4, 2004, CFF initiated the present action.

## IV.    Discussion

### A.    Standard of Review

The standard of review this court must adhere to depends on whether the

---

[3] It is unknown what design was originally submitted to the DMV by CFF in its December 2001 application.  Ostensibly it included the CFF corporate logo.

magistrate judge's order at issue dealt with a dispositive matter or a nondispositive matter. Where the order of a magistrate judge is on a nondispositive matter, a reviewing district judge shall consider any objections and "shall modify or set aside any portion of [the order] found to be clearly erroneous or contrary to law." FED. R. CIV. P. 72(a). Where the order is dispositive, the district court "shall make a *de novo* determination upon the record" of any portion of the magistrate's order to which objection has been made. FED. R. CIV. P. 72(b).

Here, plaintiff apparently proceeds on the assumption that the motion to amend at issue was a nondispositive matter, as it expressly labels its memorandum of law as in support of its "Objections to Magistrate Judge's Non-Dispositive Order" and goes on to argue that Judge Treece's decision to allow the Establishment Clause affirmative defense is clearly erroneous and contrary to law. See Dkt. No. 130-2. Dunn, on the other hand, argues that the MDO was dispositive because it disposed of an affirmative defense. At oral argument, counsel for plaintiff stated that his client takes no position one way or the other regarding the standard of review, except that it is more strongly convinced of the dispositive nature of the MDO, at least insofar as Judge Treece ruled regarding the government speech doctrine. Dunn's counsel reiterated its strong view that this court must review the MDO *de novo*.

To be sure, the Court of Appeals for the Second Circuit has not ruled on whether a motion to amend a pleading is properly classified as dispositive or nondispositive. See Rubin v. Valicenti Advisory Servs., 471 F.Supp.2d 329, 333 (W.D.N.Y. 2007). In an unpublished summary order, the Second Circuit did note that a motion to amend a complaint to add a claim is a nondispositive motion. See Kilcullen v. New York State Dep't of Transp., 55 Fed. Appx. 583, 584, 2003 WL

9

151251 (2d Cir. 2003).  Also, according to one court in the Western District of New York, "the weight of authority within this Circuit classifies a motion to amend a [pleading] as a non-dispositive pretrial motion, and holds that a magistrate's order should be reviewed under the 'clearly erroneous standard.'" Rubin, 471 F.Supp.2d at 333 (quoting Palmer v. Monroe County Sheriff, 378 F.Supp.2d 284, 289 (W.D.N.Y. 2005)) (internal quotations omitted).  See also Lyondell-Citgo Refining, L.P. v. Petroleos, No. 02-CV-0795, 2005 WL 883485, at *3 (S.D.N.Y.  April 14, 2005).  The rationale for this conclusion is that "[o]rders granting leave to amend . . . do not remove claims or defenses of a party."  See Stetz v. Reeher Enters., Inc., 70 F.Supp.2d 119, 120 (N.D.N.Y. 1999).  On the other hand, some district courts in this circuit have held that a denial of a motion to amend is dispositive in situations where the denial is based on futility, because such a motion is analyzed under the same standard as a motion to dismiss for failure to state a claim or a motion for summary judgment, both of which are dispositive motions.  See HCC, Inc. v. RH & M Mach. Co., 39 F.Supp.2d 317, 321 (S.D.N.Y. 1999).  See also  In re Bulk Oil (USA) Inc., No. 89-B-18380, 93-CV-4492, 93-CV-4494, 2007 WL 1121739, at *4 (S.D.N.Y. Apr. 11, 2007) (internal citation omitted).  The latter holding is more appropriate in this case.  Here, Judge Treece analyzed the motion to amend on futility grounds under the standard for deciding a motion to strike pursuant to Federal Rule of Civil Procedure 12(f), noting that the differences between the standard for deciding a motion to strike under Rule 12(f) and a Rule 12(b)(6) motion to dismiss are "semantic" as they are "mirror images" of one another.  See Credit Suisse First Boston, LLC v. Intersop Comm'n AG, 407 F.Supp.2d 541, 546 (S.D.N.Y. 2006).  Therefore, Judge Treece decided whether or not Dunn's proposed affirmative defenses would be futile

utilizing the Rule 12(b)(6) standard, which is that a claim or defense may not be dismissed so long as the pleading includes enough facts to state such a claim or defense "that is plausible on its face."  Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007).[4]  Consequently, this court will treat the MDO as dispositive, and will review it accordingly.

A dispositive order of a magistrate is subject to *de novo* review by the district court of those portions of the order to which objections have been made.  See 28 U.S.C. § 636(b)(1).  "The *de novo* standard obliges the district judge to make an 'independent determination of a controversy that accords no deference to any prior resolution of the same controversy.'"  George v. Gutierrez, No. 04-CV-3901, 2007 WL 1029002, at *1 (E.D.N.Y. Mar. 28, 2007) (quoting Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 51 F.Supp.2d 457, 466 (S.D.N.Y.1999) (quoting United States v. Raddatz, 447 U.S. 667, 690, 100 S.Ct. 2406 (1980) (Stewart, J., dissenting))).

### B.      Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that leave of the

---

[4] By its opinion in Bell Atlantic, the Supreme Court recently abrogated the often-cited language of Conley v. Gibson "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  127 S.Ct. 1955, 1968 (2007) (quoting Conley, 355 U.S. 41, 45-46, 78 S.Ct.99 (1957)).  In so doing, the Court found that Conley "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  Id., at 1969.  The Court of Appeals for the Second Circuit has recently interpreted Bell Atlantic to require that lower courts apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*[,]" but does not require a heightened pleading standard for civil rights claims.  Iqbal v. Hasty, 490.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

11

court to amend a pleading "shall be freely given when justice so requires." FED.
R. CIV. P. 15(a).  However, the court has discretion to deny a motion to amend
"for good reason, including futility, bad faith, undue delay, or undue prejudice to
the opposing party." McCarthy v. Dunn & Bradstreet Corp., 482 F.3d 184, 200
(2d Cir. 2007), citing Forman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227 (1962)).
As previously stated, the only objections now before this court are to the decisions
regarding futility of the proposed amendments.  Accordingly, that is only portion
of the MDO this court need concern itself with.

"[I]t is well established that leave to amend a [pleading] need not be granted
when amendment would be futile." Savitzky v. Mazzella, 210 Fed. Appx. 71, 72,
2006 WL 3826703 (2d Cir. Dec. 21, 2006) (quoting Ellis v. Chao, 336 F.3d 114,
127 (2d Cir. 2003)).  See also Forman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227
(1962).  It is axiomatic that the party opposing an amendment has the burden of
establishing that leave to amend would be futile.  Staskowski v. County of Nassau,
No. 05-CV-5984, 2007 WL 4198341, at *4 (E.D.N.Y. Nov. 21, 2007).  Where no
colorable grounds exist to support a claim or defense, a motion to amend will be
denied on the basis of futility.  See Ratcliffe v. Pradera Realty Co., No. 05-CV-
10272, 2007 WL 3084977, at *4 (S.D.N.Y. Oct. 19, 2007) (citing Barrett v. United
States Banknote Corp., 806 F.Supp.1094, 1098 (S.D.N.Y. 1992).  On the other
hand, if the movant has colorable grounds to support its claim or defense, justice
requires that leave to amend be granted.  See Ryder Energy Distrib. Corp. v.
Merrill Lynch Commodities, Inc., 748 F.2d 774, 783 (2d Cir. 1984).  Said
"colorable grounds" requirement mandates that a district court may not deny a
motion for leave to amend a pleading when said pleading is sufficient to withstand
a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), that is to say,

12

colorable grounds exist.  See Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 244 (2d Cir. 2007); Ratcliffe, 2007 WL 3084977, at *4.

When the motion before the court is for leave to amend a pleading to add a defense, as is the case here, "futility ought technically turn on [its] legal sufficiency and whether it is subject to a motion to strike under Federal Rule of Civil Procedure 12(f)[,]" the standard of review of which is the "mirror image" of a motion under Rule 12(b)(6).  Credit Suisse First Boston, LLC v. Intershop Commc'ns AG, 407 F.Supp.2d 541, 546 (S.D.N.Y. 2006).  Therefore, in deciding a motion for leave to amend on futility grounds, "the proper inquiry is comparable to that required on a motion to dismiss pursuant to [Rule] 12(b)(6)."  Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 604 (2d Cir. 2005).  It is important to note that a district court, in deciding whether a proposed amendment would be futile, should not consider the merits of the proposed claim or defense "unless the amendment is clearly frivolous or legally insufficient on its face."  Staskowski, 2007 WL 4198341, at *4 (internal citation and quotation omitted).  Instead, "a comprehensive legal analysis should be deferred to a subsequent dispositive motion."  Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co., No. 90-CV-7811, 1995 WL 3006, at *3 (S.D.N.Y. Jan. 4, 1995).  Moreover, a court should not deny a motion for leave to amend on futility grounds when the sufficiency of the proposed claim or defense requires resolution of unsettled legal issues.  See At the Airport, LLC v. Isata, LLC, 438 F.Supp.2d 55, 66 (E.D.N.Y. 2006); Sacca v. Buffalo State College, State Univ. of N.Y., No 01-CV-881A, 2004 WL 2095458, at *2-4 (W.D.N.Y. Sept. 20, 2004); Travelers Ins. Co. v. Buffalo Reins Co., No. 86-CV-3369, 1990 WL 116741, at *2 (S.D.N.Y. Aug. 7, 1990).

### *C.     Government Speech Doctrine*

Defendant Dunn objects to so much of the MDO that denies her motion to amend her answer with a government speech doctrine affirmative defense.  Dunn argues that the Magistrate misinterpreted the summary order of the Second Circuit Court of Appeals in this case, and that he erroneously reached a decision on the merits regarding the government speech doctrine defense when the law in this area is unsettled.  Plaintiff counters that the Magistrate did not misinterpret the Second Circuit's order, and that his only error was in treating the order as "highly persuasive dicta" when instead it is actually binding authority.  Plaintiff further argues that the government may discriminate based on viewpoint only when it is the sole speaker, and that the Picture Plate program in this case involves at least some private speech, thereby foreclosing Dunn's government speech defense as a matter of law.

As a general rule, the government may regulate speech based on content when it is the speaker.  See Rosenberger v. Rector & Visitors of Univ. of VA., 515 U.S. 819, 833, 115 S.Ct. 2510, 2518 (1995).  Consequently, it is a defense to a First Amendment claim of viewpoint discrimination that a government entity is regulating its own speech.  See Legal Servs. Corp. v. Velazquez, 531 U.S. 533, 541-542, 121 S.Ct. 1043, 1048-49 (2001).  "When . . . the government sets the overall message to be communicated and approves every word that is disseminated, it is not precluded from relying on the government-speech doctrine merely because it solicits assistance from nongovernmental sources in developing specific messages."  Johanns v. Livestock Mktg. Ass'n, 544 U.S. 550, 562, 125 S.Ct. 2055 (2005).  However, it is clear that "the government may discriminate on the basis of viewpoint when it is speaking *only* for itself[.]"  Children First

14

Foundation, Inc. v. Martinez, 169 Fed. Appx. 637, 639, 2006 WL 544502, at *1 (2d Cir. 2006) (citing Legal Services Corp. v. Velazquez, 531 U.S. 533, 541-42, 121 S.Ct. 1043 (2001); Bd. of Regents v. Southworth, 529 U.S. 217, 229, 120 S.Ct. 1346 (2000); Rosenberger v. Rector & Visitors, 515 U.S. 819, 833, 115 S.Ct. 2510 (1995); Rust v. Sullivan, 500 U.S. 173, 196-97, 111 S.Ct. 1759 (1991)) (emphasis added).

As an initial matter, the court will address the appropriate treatment of the summary order issued by the Second Circuit in this case. As previously set forth, defendants sought appellate review of this court's initial determination and its decision on a motion for reconsideration, declining to grant defendants' request for qualified immunity, which was presented on a Rule 12(b)(6) motion to dismiss. The Circuit agreed with this court's conclusion that facts supporting qualified immunity do not appear on the face of the complaint, and accordingly, it dismissed defendants' appeal for lack of jurisdiction. In reaching that conclusion, the Circuit first found that, based on the facts alleged in the complaint, which it was required to accept as true on a motion to dismiss, defendants engaged in viewpoint discrimination when they denied plaintiff's Picture Plate application "based on their disagreement with [the] life-affirming viewpoint expressed by the plate." Children First Foundation, Inc., 169 Fed. Appx. at 639, 2006 WL 544502, at *1 (quoting from Complaint). The Circuit went on to address defendants' argument that they reasonably believed their actions were permissible under the government speech doctrine, thus entitling them to qualified immunity. In response, the Circuit stated that:

> Although the government may discriminate on the basis of viewpoint when it is speaking only for itself, see Legal Services Corp. v.

15

Velazquez, 531 U.S. 533, 541-42, 121 S.Ct. 1043 (2001); Bd. of
Regents v. Southworth, 529 U.S. 217, 229, 120 S.Ct. 1346 (2000);
Rosenberger v. Rector & Visitors, 515 U.S. 819, 833, 115 S.Ct. 2510
(1995); Rust v. Sullivan, 500 U.S. 173, 196-97, 111 S.Ct. 1759
(1991), custom license plates involve, at minimum, some private
speech, see Wooley v. Maynard, 430 U.S. 705, 715, 717, 97 S.Ct.
1428 (1977) (holding that New Hampshire's requirement that
motorists display the message "Live Free or Die" on their license
plates violated motorists' First Amendment rights); Perry v.
McDonald, 280 F.3d 159, 166-67 (2d Cir. 2001) (describing
personalized license plates as private speech on government
property).   Therefore, it would not have been reasonable for
defendants to conclude this doctrine permitted viewpoint
discrimination in this case.

Id.  It is true that Judge Treece considered this language to be "highly persuasive

dicta" and in fact, relied heavily upon it to reach his ultimate conclusion that a

government speech doctrine defense would be futile here.  However, Judge Treece

first observed that the "legal ramification of the Second Circuit's finding that

Defendants' invocation of the government speech doctrine is not reasonable

appears to be ambiguous[,]" and that it is questionable whether Perry v.

McDonald, 280 F.3d 159, 169 (2d Cir. 2001), relied on along with Wooley v.

Maynard, 430 U.S. 705, 715,717, 97 S.Ct. 1428 (1977) by the Circuit, is

dispositive as to the Picture Plate program at issue here.  This court echoes the

Magistrate's uncertainty, but finds it significant that the Circuit was addressing the

question of whether or not it was reasonable for defendants to believe the

government speech doctrine permitted their actions based on the clearly

established decisional law of the Supreme Court and the Second Circuit at the time

defendants acted.  See African Trade & Info. Ctr., Inc. v. Abromaitis, 294 F.3d

355, 360 (2d Cir. 2002) (citing Shechter v. Comptroller of City of New York, 79

16

F.3d 265, 271 (2d Cir.1996)).  This is an entirely different analysis than what would be required if the Circuit were to address the merits of defendants' government speech doctrine defense.  In that instance, because neither the Supreme Court nor the Second Circuit have decided the issue of whether "choose life" appearing on a license plate under the Picture Plate program at issue here would be private, government, or hybrid speech, resolution of that question would likely require analysis of caselaw from outside the Circuit.

To that end, because  Judge Treece did not deem the Circuit's language to be binding so as to foreclose Dunn's government speech doctrine defense, he went on to conduct a thorough survey of caselaw from other circuit courts of appeal as well as other district courts, each analyzing the question of whether a message on a license plate is government speech, private speech, or a combination of the two – what has come to be known as "hybrid" speech.  See Sons of Confederate Veterans, Inc. v. Comm'r of VA Dep't of Motor Vehicles, 288 F.3d 610 (4th Cir. 2002) (applying a four-prong test adopted from the Tenth, Eighth and Ninth Circuits to conclude that a logo of the confederate flag on a state license plate was private speech, and by acting pursuant to a state statute, which prevents the use of a logo on a state license plate and was applied to prevent the use of the confederate flag, the state of Virginia engaged in viewpoint discrimination); Planned Parenthood of S.C. v. Rose, 361 F.3d 786, 795-799 (4th Cir. 2004) (applying same four-prong test as in Sons of Confederate Veterans, supra, to conclude that message, "choose life," which appeared on a state license plate via statute authorizing specialty plate but providing no alternative pro life message was hybrid speech, and that said statute equated to viewpoint discrimination, for which the government speech doctrine could not be used as a defense because the

17

message included some private speech); American Civil Liberties Union v. Bredesen, 441 F.3d 370 (6th Cir. 2006) (on a challenge to a Tennessee statute similar to the Virginia statute in Rose, *supra*, finding message was government speech and that government speech doctrine applied as a defense to viewpoint discrimination); Arizona Life Coal. v. Stanton, No. 03-CV-1691, 2005 WL 2412811 (D. Ariz. Sept. 26, 2005) (on facts most similar to those of this case, finding, after applying four-prong test, that license plate bearing "choose life" with picture of crayon drawing of two children was government speech, but nonetheless applying a forum analysis to conclude the license plate program was a non-public forum and that no viewpoint discrimination existed); Women's Res. Network v. Gourley, 305 F.Supp.2d 1145 (E.D. Cal. 2004) (finding "choose life" plate is hybrid speech but because government component trumped private, the government speech doctrine applied as a defense to claim of viewpoint discrimination); Choose Life Illinois, Inc. v. White, No. 04-CV-4316, 2007 U.S. Dist. LEXIS 21863 (N.D. Ill. Jan. 19, 2007) (utilizing four-prong test to find that specialty plate is private speech, specifically rejecting Bredesen, *supra*, as "forced," and concluding that viewpoint discrimination existed).  These cases elucidate the fact that, as Judge Treece aptly observed, regarding the question of whether the phrase "choose life" appearing on a license plate is government, private, or hybrid speech, "there is no agreement among the other Circuits. Rather, the difference among them is palpably remarkable."  MDO at 22.

    Because the Second Circuit has not had the opportunity to decide the government speech issue on the merits in this case, this court is not bound by the language set forth in the Circuit's summary order.  The Circuit's conclusion that "custom license plates involve, at minimum, some private speech[,]" Martinez,

169 Fed. Appx. at 639, 2006 WL 544502, at *1, was not based on a thorough analysis of the law regarding the government speech doctrine, nor was it based on a full evaluation of the specific facts of this case.  Instead, that statement of the law reflected the Circuit's evaluation of the clearly established decisional law of this Circuit and the Supreme Court that a reasonable government official would have known at the time of defendants' actions in this case, which is the correct legal analysis on a request for qualified immunity.  On a motion to amend a responsive pleading involving, as here, an unsettled area of the law, this court declines to deem Dunn's proposed government speech doctrine defense futile or to decide the merits of said defense.  Without the benefit of full discovery of the facts in this case, the court is unable to decide whether the Picture Plate program involves purely government or private speech.  The appropriate inquiry at this stage is whether the government speech defense is clearly without merit, a question that this court is unable to answer in the affirmative.  Accordingly, Dunn's motion to amend her answer is granted insofar as she seeks to add an affirmative defense based on the government speech doctrine.

### D.     *Establishment Clause*

Next, plaintiff CFF objects to so much of the MDO that grants defendant Dunn's motion to amend her answer with an Establishment Clause neutrality affirmative defense.  Plaintiff argues that the phrase, "Choose Life" is not religious speech, and even if it is, the Magistrate erred by entirely eliminating the analysis required to decide whether the Establishment Clause would prevent the state from granting plaintiff's Picture Plate application in this case.  Dunn counters that it is not necessary to reach the merits of her proposed Establishment Clause defense, instead all that is required is a finding that the defense raises a colorable ground

for relief.  Dunn further argues that "Choose Life" does convey a religious message, and therefore, the state has an interest in avoiding the appearance of endorsing that message in violation of the Establishment Clause.

The Establishment Clause of the First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion[.]" U.S. CONST. amend. I.  The Supreme Court has established the touchstone for analysis under the Establishment Clause: "[T]he First Amendment mandates government neutrality between religion and religion, and between religion and nonreligion."  McCreary County, KY v. American Civil Liberties Union of KY, 545 U.S. 844, 860, 125 S.Ct. 2722, 2733 (2005) (internal citations omitted).  "When the government acts with the ostensible and predominant purpose of advancing religion, it violates the central Establishment Clause value of official religious neutrality when the government's ostensible object is to take sides."  Id. (citation omitted).  To be sure, the Court has stated that the Establishment Clause only applies to government, not private, speech.  See Capitol Square Review and Advisory Bd. v. Pinette, 515 U.S. 753, 767, 115 S.Ct. 2440, 2449 (1995).  "Religious expression cannot violate the Establishment Clause where it (1) is purely private and (2) occurs in a traditional or designated public forum, publicly announced and open to all on equal terms."  Id. at 770, 115 S.Ct. at 2450.

Here, Judge Treece noted that "[w]hether 'Choosing Life' is governmental speech conveying a one-sided, religious message is a 'highly fact-specific' process, [to be analyzed] under the reasonable observer standard."  MDO at 30, citing Skoros v. City of New York, 437 F.3d 1, 29 (2d Cir. 2006).  Said standard is an objective one, which "concentrates upon the 'perception of a reasonable,

informed observer [who] must be deemed aware of the history and the context of the community and forum in which the religious display appears."  MDO at 30, quoting Elewski v. City of Syracuse, 123 F.3d 51, 53 (2d Cir. 1997).  See also Jock v. Ransom, No. 05-CV-1108, 2007 WL 1879717, at *19 (N.D.N.Y. June 28, 2007).  Judge Treece went on to state that

> [t]here is substance to the argument that "Choose Life," as a pro-life affirming tenet, in material respects, transmits a religious message. Choose Life Illinois, Inc. v. White, No. 04-C-4316, 2007 WL 178455, at *1 (N.D. Ill. Jan. 19, 2007) ("[I]t is not lost on this court that these words are also closely associated with the 'Right to Life/Anti-Abortion' political point of view."); Ariz. Life Coalition, Inc. v. Stanton, No. CV-03-1691, 2005 WL 2412811, at *10 (D. Ariz. Sept. 26, 2005) ("partisan world of abortion politics").  Only the most ill-informed person would find that the abortion debate does not have religious overtones and implications.  It is also ineluctable that the abortion debate and even religion in every day life can be divisive. McCreary County, Ky. v. A. Civil Liberties Union of Ky., 545 U.S. 844, 881, 125 S.Ct. 2722 (2005).  The Establishment Clause was meant "to guard against the civic divisiveness that follows when the Government weighs in on one side of a religious debate; nothing does a better job of roiling society[.]" Id. at 876.

MDO at 30.  Judge Treece ultimately concluded that because there is substance to Dunn's argument that "choose life" is religious in nature, her proposed Establishment Clause defense is not futile.  See id. at 30-31.  Accordingly, Judge Treece granted Dunn's motion to the extent she seeks to amend her answer with an Establishment Clause affirmative defense.

Plaintiff argues that Judge Treece unnecessarily applied the reasonable observer analysis because that legal standard is utilized only to identify whether the religious message at issue may be understood as endorsed or sponsored by the government, not to determine whether the message is religious in the first instance,

21

which is the only relevant question here.  Plaintiff argues that Judge Treece's conclusion that "Choose Life" is a religious message is "bereft of necessary analysis."   However, plaintiff fails to identify any caselaw setting forth the proper legal analysis for the court to determine whether speech is religious in nature, and at oral argument, plaintiff's counsel stated that said question has never been judicially evaluated.  Therefore, counsel argued, the court must use common sense to decide the issue.

Although it is true that no court has decided the specific issue of whether the phrase, "Choose Life" is religious speech, the question of what is religion or what is religious has been addressed by the Court of Appeals for the Second Circuit, albeit in a factual context which differs from that presented in this case. See United States v. Allen, 760 F.2d 447 (2d Cir. 1985) (deciding whether criminal convictions for damage to a B-52 bomber on a United States Air Force Base violated the Establishment Clause where defendants allege the property protection statute under which their conviction stood advances the religion of "nuclearism" by protecting nuclear weapons).  In deciding that "nuclearism" is not a religion for purposes of an Establishment Clause analysis, the court noted the difference between political judgment and religious belief.  See id. at 450 (citing United States v. Seeger, 380 U.S. 163, 165, 85 S.Ct. 850 (1965)).  In reaching this conclusion, the court addressed the difference between what is religious in a Free Exercise Clause analysis as opposed to an Establishment Clause analysis, as follows:

> we must acknowledge that "religion" can have a different meaning depending on which religion clause of the First Amendment is at issue.  It may be that a person who expounds "nuclearism" as his religion, consciously worship[]ing these weapons as gods of

22

destruction, would be entitled to some protection under the free
exercise clause.  That the Government advances what is, conceivably,
someone's religion, however, does not make what most citizens
consider a political or military action a violation of the establishment
clause.  As Professor Laurence Tribe has noted,

> Clearly, the notion of religion in the free exercise clause
> must be expanded beyond the closely bounded limits of
> theism to account for the multiplying forms of
> recognizably legitimate religious exercise.  It is equally
> clear, however, that in the age of the affirmative and
> increasingly pervasive state, a less expansive notion of
> religion was required for establishment clause purposes
> lest all "humane" programs of government be deemed
> constitutionally suspect.

L. Tribe, <u>American Constitutional Law</u> 827-28 (1978) (footnote
omitted); <u>accord</u> <u>Grove v. Mead School District No. 354</u>, 753 F.2d
1528, 1541-1542 (9th Cir.1985) (Canby, J., concurring).  Professor
Tribe goes on to suggest that "all that is 'arguably religious' should
be considered religious in a free exercise analysis," while "anything
'arguably non-religious' should not be considered religious in
applying the establishment clause."  Id. at 828 (emphasis in original).
Although we need not follow him to that extreme in this opinion –
supporting nuclear armaments being a good deal more than
"arguably" non-religious – we find his analysis helpful and
provocative.

<u>Id.</u> at 450-51.  Guided by this language from the Second Circuit, the court

respectfully disagrees with Judge Treece's conclusion that the phrase, "Choose

Life" conveys a religious message, which would implicate defendants' interest in

avoiding a violation of the Establishment Clause.

Accepting the allegations in the Amended Complaint as true, as the court

must, the purpose of plaintiff organization is "to raise funds and awareness to

promote and support adoption as a positive choice for women with unwanted

pregnancies or newborns[.]"  Am. Compl. ¶ 31.  The proposed Picture Plate was to

23

include CFF's corporate logo, which is "a yellow sun behind the faces of two smiling children that are drawn as if in crayon by a child, and beneath them, the words 'Choose Life' which appear also as if scrawled in crayon by a child."  Am. Compl. ¶ 33a.  Contrary to blatantly religious symbols such as a crucifix or menorah, or to obviously religious messages, such as well-known passages cited from the Bible or Koran, the above described proposed Picture Plate with the phrase "Choose Life," while possibly evoking the pro-life versus pro-choice abortion debate, is more aptly described as political, rather than religious, speech. Significantly, the judicial opinions relied on by Judge Treece for his conclusion that "Choose Life" is "a pro-life affirming tenet, [which] in material respects, transmits a religious message[,]" MDO at 30, more accurately support the premise that the phrase is associated with the abortion debate, which is political, not religious, in nature.  See Choose Life Illinois, Inc. v. White, No. 04-C-4316, 2007 WL 178455, at *1 (N.D. Ill. Jan. 19, 2007) ("[I]t is not lost on this court that these words are also closely associated with the 'Right to Life/Anti-Abortion' *political* point of view."); Ariz. Life Coalition, Inc. v. Stanton, No. CV-03-1691, 2005 WL 2412811, at *10 (D. Ariz. Sept. 26, 2005) ("partisan world of abortion *politics*") (emphasis added).

It may very well be true that those who participate in the abortion debate on the pro-life side are members of religious organizations whose religious beliefs form the basis for their views.  However, that does not transform the pro-life stance into one that is religious in nature, nor does it transform the phrase, "Choose Life" into religious speech.  Nothing in constitutional jurisprudence supports the conclusion that political speech which is derived from one's ethical or religious beliefs or background transforms it into religious speech.  Many religious

persons and organizations may be opposed to capital punishment, or perhaps in favor of gun control.  Those political issues are not therefore automatically transformed into religious issues simply by virtue of the religious beliefs of their supporters.  The same is true for the abortion debate.

Moreover, this court finds instructive Professor Tribe's suggestion, which was cited by the Second Circuit, of a "less expansive notion of religion" when undertaking an Establishment Clause analysis.  <u>Allen</u>, 760 F.2d at 450. Considering that the phrase, "Choose Life" is more "arguably non- religious" than religious, for Establishment Clause purposes, the court's conclusion should weigh on the less expansive side.

For these reasons, the court is unable to find that religious expression is implicated by plaintiff's proposed use of the phrase, "Choose Life," on a Picture Plate, and therefore, the court concludes that analysis of government endorsement under the Establishment Clause is unnecessary, rendering Dunn's proposed Establishment Clause neutrality defense futile.  <u>See</u> <u>Capitol Square Review</u>, 515 U.S. at 770, 115 S.Ct. at 2450.  Accordingly, Dunn's motion to amend her answer in this regard is denied.

### *V.     Conclusion*

After due consideration of the objections filed by plaintiff Children First Foundation, Inc., <u>see</u> Dkt. No. 130, and defendant Jill A. Dunn, <u>see</u> Dkt. No. 131, to the August 3, 2007 Memorandum, Decision and Order of Magistrate Judge Randolph Treece, <u>see</u> Dkt. No. 128, it is hereby ORDERED that Judge Treece's Memorandum, Decision and Order is reversed;

and it is further ORDERED that defendant, Jill A. Dunn's motion to amend her answer, <u>see</u> Dkt. No. 67, is GRANTED in part to allow her to amend her

answer with a government speech doctrine affirmative defense, and DENIED in part, to prevent her from amending her answer with an Establishment Clause neutrality defense;

and it is further ORDERED that defendant, Jill A. Dunn file an amended answer in accordance with this court's Memorandum, Decision and Order no later than January 26, 2008.


IT IS SO ORDERED.


DATED:      December 27, 2007
            Syracuse, New York


_____
Neal P. McCurn
Senior  U.S. District Judge

26