**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**THE CHILDREN FIRST FOUNDATION, INC**.,
a New York non-profit organization,

                                        Plaintiff,

             - v -                                      Civ. No. 1:04-CV-0927
                                                                (NPM/RFT)

**RAYMOND P. MARTINEZ**, individually;
**DAVID J. SWARTZ**, in his official capacity
as Commissioner of the New York Department
of Motor Vehicle; **JILL A. DUNN**, individually;
**NEAL SCHOEN**, in his official capacity as Deputy
Commissioner and Counsel for the New York Department
of Motor Vehicles; **GEORGE E. PATAKI**,
individually, and **ELIOT SPITIZER**, in his official
capacity as Governor of the State of New York,
                                        Defendants.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**APPEARANCES**:                        **OF COUNSEL**:

ALLIANCE DEFENSE FUND                   BRIAN W. RAUM, ESQ.
*Attorney for Children First Foundation, Inc.*
15100 N. 90th Street
Scottsdale, AZ 85260

ALLIANCE DEFENSE FUND                   JAMES M. JOHNSON, ESQ.
*Attorney for Children First Foundation, Inc*.
401 Market Street, Suite 900
Shreveport, LA 71101

ALLIANCE DEFENSE FUND - DC OFFICE       JEFFREY A. SHAFER, ESQ.
*Attorney for Children First Foundation, Inc.*
801 G. Street N.W., Suite 509
Washington, D.C. 20001

HISCOCK & BARCLAY, LLP                  LINDA J. CLARK, ESQ.
*Attorney for Jill A. Dunn, individual capacity*   MICHAEL J. GRYGIEL, ESQ.
50 Beaver Street
Albany, N.Y. 12207-2830

HOUGUET, NEWMAN LAW FIRM                          IRA J. LIPTON, ESQ.
*Attorney for George Pataki, individual capacity*      ELIZABETH A. MUSELLA, ESQ.
10 East 40th Street
New York, N.Y. 10016

HARRIS BEACH PLLC                                MARK J. MCCARTHY, ESQ.
*Attorney for Raymond Martinez, individual capacity*
677 Broadway, Suite 1101
Albany, N.Y. 12207

HON. ANDREW M. CUOMO,                            SENTA B. SIUDA, ESQ.
Attorney General For The State Of New York        Asst. Attorney General
R *Attorney for Neal Schoen, Eliot Spitzer,*     T
*and David J. Swartz, in their official capacities*
The Capitol
Albany, N.Y. 12224

## MEMORANDUM-DECISION AND ORDER

Presently before this Court is Defendant Dunn's Motion to Compel responses to limited interrogatories and production of documents which were served upon Children First Foundation (CFF). Dkt. No. 88, Dunn's Mot. to Compel, dated Apr. 13, 2007. CFF opposes Dunn's Motion to Compel. Dkt. No. 97. After seeking the Court's permission, Dunn was permitted to file a Reply to CFF's Opposition, Dkt. No. 103, and CFF was permitted to file a Sur-Reply, Dkt. No. 110. For the reasons to follow, Dunn's Motion to Compel is **denied**.

## I.  BACKGROUND

To truly appreciate the nuance of this Motion and the Opposition thereto, we must harken back to June 5, 2006, when the Uniform Pretrial Scheduling Order (UPTSO) was issued. Dkt. No. 45. The UPTSO, *inter alia*, set the discovery deadline as February 28, 2007. *Id*. We must remain mindful that during this discovery period the Attorney General's Office represented all of the Defendants and accordingly pursued discovery on their behalf. As the case drew nearer to the

discovery deadline, the parties submitted a stipulation asking this Court to grant a stay pending a decision on the parties' respective motions for summary judgment on the issue of liability. Essentially, the parties were seeking only a stay of disclosures regarding the issue of damages. Dkt. No. 53, Stip., dated Dec. 29, 2006.   It would appear then, with the exception of depositions, discovery as to liability was nearly completely explored.  The Court stayed the discovery of damages and further directed that the parties complete liability discovery by February 28, 2007.  Dkt. No. 56, Order, dated Jan. 5, 2007.

Eventually, on January 26, 2007, this Court was alerted that depositions had come to a standstill as Defendant Dunn refused to appear for her scheduled deposition since she was retaining private counsel.  Dkt. No. 57, Pl.'s Lt.  Primarily due to the change in legal representation and the difficulties in coordinating twelve depositions, a joint application was made to extend the discovery deadline to May 31, 2007.  Dkt. No. 60, Joint Lt.-Mot, dated Feb. 22, 2007.  On this same day, Dunn's new counsel filed a Notice of Appearance.  Dkt. No. 61.  Accordingly, based upon the Joint Request, the Court extended the discovery deadline until May 31, 2007, "only for the purpose of permitting depositions."[1]  Dkt. No. 62, Text Order, dated Feb. 23, 2007.

Dunn then made another appeal to the Court to reconsider our previous Order and permit a few "discreet, but important" documentary disclosures as well as grant her an opportunity to amend her Answer to clearly assert certain personal defenses that had not been pled when she was represented by the Attorney General's Office.  Dkt. Nos. 63 & 64, Dunn's Lt.-Mot., dated Feb. 27, 2007.  On March 7, 2007,  the Court held a telephone conference, on the record, to hear Dunn's

---

[1] At this juncture, the Court denied an effort to extend the deadlines with respect to paper disclosure.  *See* Dkt. No. 62; No. 63, Dunn's Lt., dated Feb. 23, 2007.

*-3-*

entreaties.  After the conference, an Order was issued granting, *inter alia*, Dunn permission (1) to file a motion to amend her Answer and (2) to serve one last round of Demands for Interrogatories and Production which address solely the First Amendment.  Dkt. No. 66, Text Order, dated Mar. 7, 2007.[2]  Dunn served her Demands for Interrogatories and Production immediately after the March 7th Order and CFF responded promptly; one month later on April 13, 2007, the  Motion to Compel was filed.  *See* Dkt. Nos. 88-5 (Ex. C), Dunn's Demands, dated Mar. 13, 2007, & 88-6 (Ex. D), CFF's Responses.

A relevant correlation to Dunn's Motion to Compel is her Motion to Amend her Answer to assert the defenses of government speech doctrine and the Establishment Clause neutrality defense.  Dkt. No. 67.[3]  As will be discussed further, it was the proposed defense of the Establishment Clause that begged the question as to granting further, yet limited discovery, at a point in time when, essentially, all other paper disclosure was foreclosed.  In persuading the Court to grant Dunn permission to file a Motion to Amend, it was represented that an amended answer would "implicate defenses under the establishment clause[,] and we would like to see those defenses more clearly articulated in the answer and that defense . . . would also be the focus of some discrete discovery demands[.]" Dkt. No. 125, Tel. Conf. Transcript (hereinafter "Tr."), dated Mar. 7, 2007, at p. 5; *see also* Dkt. No. 66 (Order granting Dunn permission to file a Motion to Amend her answer).  That

---

[2]  Notwithstanding the specific text of the March 7th Order, we must view this in the context of the actual discussion  and arguments heard during the telephone conference.  *See infra* Part II.A.

[3]  When Dunn was represented by the Attorney General's Office, the government speech doctrine had been raised on behalf of all Defendants before the District Judge on a Motion to Dismiss and the Second Circuit on appeal but had not been pled in anyone's Answer.  Dunn's proposed Amended Answer added, "[t]he amended complaint is barred, in whole or in part, by the government speech doctrine."  Dkt. No. 67-2, Ex. A, at ¶ 137.  However, since the government speech doctrine had been previously and vigorously discussed in this litigation, it was presumed at the time of filing the Motion to Amend that the parties had already engaged in paper discovery as to this defense.  As noted above, the Establishment Clause of the First Amendment of the United States Constitution had not been firmly interjected into this case until Dunn's proposed Amended Answer.  *Id*. at ¶ 138.

Motion to Amend was filed on March 22, 2002, Dkt. No. 67, and we rendered a Memorandum-Decision and Order (MDO) granting in part and denying in part the Motion to Amend on August 3, 2007, Dkt. No. 128.  This MDO was appealed.  *See* Dkt. Nos. 130 & 131.  Recently, on December 27, 2007, the Honorable Neal P. McCurn, Senior United States District Judge, rendered a Memorandum-Decision  and Order (MDO) reversing this Court's MDO on Dunn's Motion to Amend.  Dkt. No. 160.

Succinctly, where this Court had found Dunn's proposed defense of government speech doctrine futile and granted her permission to amend her Answer to add only the Establishment Clause neutrality defense, Judge McCurn, for the reasons stated in his MDO, conducted a *de novo* review of our MDO and reinstated Dunn's government speech doctrine defense but denied her the right to amend her Answer to include an Establishment Clause neutrality defense.  In denying Dunn the right to include the Establishment Clause neutrality defense in her Answer, Judge McCurn respectfully disagreed with this Court's assessment "that the 'Choose Life' message could have a religious message" and that "[t]here is substance to the argument that 'Choose Life,' as a pro-life affirming tenet, in material respects, transmits a religious message."  *See* Dkt. No. 128, Treece MDO at pp. 30 & 31; Dkt. No. 16, McCurn MDO at p. 23.  Judge McCurn's disagreement with this Court's finding that "Choose Life," a pro-life affirming tenet, as being particularly religious vernacular was clearly stated as follows:

> Contrary to blatantly religious symbols such as a crucifix or menorah, or to obviously religious messages, such as well-known passages cited from the Bible or Koran, the above described proposed Picture Plate with the phrase "Choose Life," while possibly evoking the pro-life versus pro-choice abortion debate, is more aptly described as political, rather than religious, speech.

Dkt. No. 160 at p. 24.

****

It may very well be true that those who participate in the abortion debate on the pro-life side are members of religious organizations whose religious beliefs form the basis for their views.  However, that does not transform the pro-life stance into one that is religious in nature, nor does it transform the phrase, "Choose Life" into religious speech.

*Id*.

****

Considering that the phrase, "Choose Life" is more "arguably non-religious" than religious, for Establishment Clause purposes, the court's conclusion should weigh on the less expansive side.

*Id.* at p. 25.

Thus, in the final analysis, Judge McCurn concluded "that analysis of government endorsement under the Establishment Clause is unnecessary, rendering Dunn's proposed Establishment Clause neutrality defense futile." *Id*. (citation omitted).  Upon finding the defense futile and consequentially denying its inclusion in Dunn's Amended Answer, Judge McCurn's Ruling, in this regard, is dispositive.[4]

## II. DISCUSSION

### A. Scope of the Limited Discovery

After a lengthy telephone conference on the scope of Dunn's limited discovery request, this Court issued a Text Order permitting her an opportunity to serve "one last round of Demands for

---

[4]  By virtue of Judge McCurn's review of our MDO being *de novo*, rather than the clearly erroneous and contrary to the law standard, his declaration that the Establishment Clause defense in this case is futile has now become law of the case. The law of the case doctrine is a seminal principle of law.  Essentially, under this doctrine, any decision made on an issue of law made at one stage of a case becomes a binding precedent to be followed throughout the litigation.  "[T]he doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *In re PCH Assoc*, 949 F.2d 585, 592 (2d Cir. 1991) (citations omitted).  "While the doctrine is ordinarily applied in later stages of the same lawsuit, it also has application to different lawsuits between the same parties." *Id*. (citations omitted).

The underlying considerations for this doctrine are obvious: to maintain fairness to the parties; to maintain consistency throughout the litigation; to avoid reconsideration of matters once decided during the course of the litigation; and to promote judicial economy and societal interest in finality. *Prisco v. A & D Cartin Corp.*, 168 F.3d 593 (2d Cir. 1999); *Soto-Lopez v. NYC Civil Serv. Comm'n*, 840 F.2d 162 (2d Cir. 1998) (a litigant should not be allowed to disregard this doctrine to prejudice the party seeking the benefit of the doctrine); *see also County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997).

Interrogatories and Production [of Documents] which address solely the First Amendment[.]" Dkt. No. 66.  On March 13, 2007, Dunn served her First Set of Interrogatories and First Request for the Production of Documents.  Dkt. No. 88-2, Linda J. Clark, Esq., Decl., dated Apr. 13, 2007, at ¶ 7. Pursuant to the Court's directions, Dunn propounded ten interrogatories and eleven document requests.  Dkt. No. 88-5, Ex. C.  Interestingly, many of the interrogatories resonate with inquiries directed at "religious, pro-life, right to life or anti-abortion organization, association, or entity."  *Id*. Responding to the Demands, CFF did not provide any answers to the interrogatories nor provided any documents, raising instead comprehensively that

> Plaintiff objects to this [interrogatory/document request] on the ground that it violates the Court's order which permits Defendant Dunn to propound additional discovery requests only to the extent necessary to support an Establishment Clause defense. This request is not reasonably calculated to lead to the discovery of admissible evidence as to that defense, or otherwise.

Clark Decl., at ¶ 9; Dkt. No. 88-5, CFF's Responses.

Evidently, CFF raises the concern that the Demands were not consistent with the March 7th Conference and the implicit nature of the Court's Order.  Dkt. No. 97.  On the other hand, Dunn construes the March 7th Order more broadly, positing that the Court did not limit discovery to a "narrow subset of the First Amendment[,] [the Establishment Clause]," but rather ruled in such a way that her discovery "could encompass issues relating to namely First Amendment claims generally."  Clark's Decl. at ¶ 6.  We recognize the vortex of this disagreement as the Court's casual acquiescence to Dunn's request to draft her Interrogatories and Demands within the framework of the First Amendment, and we accept some blame for that.  But, in the context of previous discovery scheduling discussions and the tone and text of the telephone conference, we have to agree with CFF that in granting Dunn limited discovery the Court did not intend it to be a broad sweep across the

-7-

First Amendment and instead was meant to be narrowly crafted.[5]  The prominent justification for this

reasoning can be found in the relevant and material text of the March 7th telephone conference:

| | |
|---|---|
| Clark: | Specifically, I'm talking about our view of the First Amendment issue in the case that we think implicates defenses under the establishment clause[] and . . . would also be the focus of some discrete discovery demands that we would like to make on Jill's behalf. |
| Court: | Okay.  So when you're saying discrete discovery demands, what are we talking about, interrogatories, demands for documents? |
| Clark: | We're talking about a brief set of interrogatories and a discrete document demand that would explore the establishment clause connection between the plaintiff and religious organizations. |

Dkt. No. 125, Tr. at p. 5.

****

| | |
|---|---|
| Clark: | Your Honor, I would anticipate that ten interrogatories would enable us to cover the issues that we're looking at that relate to the establishment clause. |
| Court: | So you would be directing these interrogatories only as to the establishment clause. You will not go back into issues that have already been covered when the Attorney General's Office represented Miss Dunn? |

****

| | |
|---|---|
| Clarke: | That's correct, your Honor. |
| Clarke: | Again, we'd be looking for the documents that establish any connection between the plaintiff and religious organizations to the extent that the connection relates to our defenses under the establishment clause. |

---

[5]  Near the end of our telephone conference, CFF asked the Court to limit discovery to the issues presented and related to its relationship with other religious organizations.  The following discourse ensued:

Court:   All right.  Do you have any opposition to Brian's request that, you know, there is a direction in there that the interrogatories and the demands would be limited to the establishment clause?

Clark:   Well, can we make it the First Amendment because what we're talking –

Court:   Well, okay, I would make it the First Amendment.

Clark:   Okay.  That would be fine.

Raum:   I think the whole (inaudible) First Amendment is very broad.  I'm just trying to get a little narrowing under the circumstances, that's all.

Court:   Well, I think if they're restricting theirself to ten – I'm not going to restrict the number but if they're saying ten, I think it's going to be pretty narrow.

Raum:   Okay.
Dkt. No. 125, Tr. at pp. 13-14.

*Id*. at p. 6.

****

Raum:   So the fact that it took so long should not prejudice the plaintiff in any way and cause us now to have to reopen discovery and respond to an establishment clause defense, which, to be honest with you, has never ever been deemed to be a valid defense in these kind of cases.

*Id*. at p. 9.

****

Unknown:   May I interject? I don't think the demands that we need to make are dependent upon the outcome of the motion to amend. The issues that we're raising with respect to the relationship between this plaintiff and the (inaudible) organization and the religious organizations that are associated with them are clearly already issues in the case, . . . and I think we'd be entitled to explore those issues even within the current context and parameters of the pleadings that exist in the case.

*Id*. at p. 11.

****

Court:   (responding to Raum), [A]s I understand it, the interrogatories were going to be directed at the establishment clause. The demands were going to be directed at the establishment clause. It appear[s] that all other interrogatories and demands to produce have covered the other issues. Miss Clark, is that your –

Clark:   Yes, your Honor, that's correct.

*Id*. at p. 13.

The above material discourse establishes two critical points. First, it confirms that the Court was remaining steadfast, of which the parties were un-mistakenly apprised, not to allow any further discovery that the parties could have engaged or garnered prior to Dunn's request to amend her Answer to include the Establishment Clause defense. *See supra* pp. 2-4. At this juncture, only discovery as to damages, depositions, and Dunn's limited discovery remain available. We presumed from the pretrial litigation history of the case, including our belief that everyone understood that matters pertaining to the government speech doctrine had or should have been exhausted, since it had been interjected earlier into the case by her previous counsel. All that laid unexplored would have been the Establishment Clause and relatively nothing else. Second, no other First Amendment issue or defense was discussed during the March 7th Conference that would have alerted the

*-9-*

participants that an order allowing further discovery would be expanded beyond the Establishment Clause. The Court did not fathom then nor now what other aspects of the First Amendment would be implicated in Dunn's request for limited discovery. We concluded that the crux of her limited discovery would have been directed at the Establishment Clause defense and CFF's relationships with religious and pro-life affirming organizations. Supporting the reasonableness of this conclusion is the absence of any discussion or dialogue about the government speech doctrine or any other First Amendment issue that could conceivably have been encompassed within the March 7th Order. Had those issues been raised during the Conference, certainly a further debate would have resulted, since CFF's protest throughout the Conference was either directed at narrowing the scope of the limited discovery or preventing it entirely. Hence, the March 7th Order was contemplated to embrace singularly the Establishment Clause defense.

However, we disagree with CFF as to whether, materially, Dunn's Interrogatories and Production Demands were designed to elicit information pertinent to the Establishment Clause. CFF claims that they do not. With the exception of Dunn's First Interrogatory and First Document Demand, the gist of the Demands are related to the Establishment Clause. As Dunn observed, "[p]laintiff's argument is curious in the sense that nearly all of Ms. Dunn's interrogatories and document requests, in fact, relate to the Establishment Clause." Dkt. No. 103, Reply Mem. of Law at p. 6, n. 3. Dunn's arguments supporting the individual interrogatories and production requests are persuasive on this account. *Id*. at pp. 7-10. The Demands' primary focus on the Establishment Clause notwithstanding, we must determine whether the overall issue is relevant and calculated to lead to admissible evidence.

### B.  Establishment Clause Relevancy

Generally, the scope of discovery in federal lawsuits is significant and broad.  FED. R. CIV.

P.  26(b)(1) states in pertinent part that:

> [p]arties may obtain discovery regarding any not privileged matter that is relevant to
> any party's claims or defenses . . . . For good cause, the court may order discovery
> of any matter relevant to the subject matter involved in the action . . . . Relevant
> information need not be admissible at the trial if the discovery appears reasonably
> calculated to lead to the discovery of admissible evidence.

Considering the court's inherent powers to regulate discovery and permit discovery of information

relevant to the subject matter, discovery then, in a sense, is more expansive and liberal, guided by

the reasonable needs of the case.  *In re Six Grand Jury Witnesses,* 979 F.2d 939, 943 (2d Cir. 1992).

 However, those reasonable needs and the parameters of relevancy may be dictated by previous court

rulings.

As we have mentioned above, Dunn's quest to amend her Answer is inextricably connected

to her limited discovery demand.  In reversing our MDO on her Motion to Amend, Judge McCurn

laid to rest whether the Establishment Clause neutrality defense is relevant at all.  Judge McCurn

noted that he was "unable to find that religious expression is implicated by plaintiff's proposed use

of the phrase, 'Choose Life,' on a Picture Plate, and therefore, the court concludes that analysis of

government endorsement under the Establishment Clause is unnecessary, rendering Dunn's proposed

Establishment Clause neutrality defense futile." Dkt. No. 160, at p. 25; *see also supra* pp. 5-6.  Since

Judge McCurn conducted a *de novo* review of our MDO, his ruling on this issue that analysis of the

Establishment Clause is unnecessary is now deemed law of the case.  *See supra* note 4.  Because of

Judge McCurn's Ruling, any information that could be gleaned from the following Interrogatories

and Production Demands is neither relevant nor calculated to lead to the discovery of admissible

*-11-*

evidence: Interrogatory & Document Request Nos. 2, 3, 4, 5, 6, 7, 8, 9, and 10.[6]  And to the extent that these specific Interrogatories and Document Requests do not pertain to the Establishment Clause, they are likewise not relevant.

The above finding leaves us with one Interrogatory and Document Request, designated as number one (no. 1), to consider.  The thrust of this Interrogatory and Document Request is to gain "each statement and/or action that will be attributed to Jill A. Dunn for alleged violation of Plaintiff's rights under the First Amendment of the United States Constitution[.]" Dkt. No. 88-5, at p. 3.  Dunn argues that this information is germane to her defense that DMV's decision not to issue the plate was "objectively reasonable" under the government speech doctrine and to further discern how she "officially and personally" violated CFF's rights.  Dkt. No. 103 at p. 7.  As we now know, the government speech doctrine remains viable in this case.  Dkt. No. 160 at p. 19.  Although we had attempted to foreclose the repetition and redundancy of certain discovery matters, such as the government speech doctrine, we take the following factors into consideration in allowing this one last inquiry, if it had not already been asked.  First, we note our fault in possibly intimating that Dunn's limited discovery under the First Amendment may include other aspects of the First Amendment.  Second, now that Dunn is represented by independent counsel and may not defend herself in lockstep with the other Defendants, it appears to be prudent and just to allow her to make this last paper inquiry since it is narrowly tailored to her, and this Court does not foresee any prejudice to CFF.

---

[6] In the event it is subsequently argued that these Interrogatories and Document Demands can be requested in the context of the government speech doctrine, we respectfully disagree inasmuch as we were only permitting Establishment Clause discovery and the government's right to regulate the content of its own speech does not fall within this Clause.

## III. CONCLUSION

For the reasons stated above, it is hereby ordered that Dunn's Motion to Compel (Dkt. No. 88) is **denied**, except Plaintiff shall provide a response to Interrogatory No. 1 and the documents for Demand to Produce No. 1, on or before February 11, 2008.[7]

**IT IS SO ORDERED**.

R   Date:   January 8, 2008    F                              T
            Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge

---

[7]  We are cognizant that there is another appeal pending before Judge McCurn regarding a Discovery Order, Dkt. No. 157, and he has stayed compliance of that Discovery Order until Court rules as to any objections filed.  Dkt. No. 159, Order, dated Dec. 19, 2007.

*-13-*