UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THE CHILDREN FIRST FOUNDATION,
INC.,

                                              Plaintiff,


          -v.-                                          1:04-CV-0927
                                                        (NPM/RFT)

RAYMOND P. MARTINEZ, individually,
and BARBARA J. FIALA, in her official
capacity as Commissioner of the New York
State Department of Motor Vehicles,[1]

                                              Defendants.


APPEARANCES:                         OF COUNSEL:

ALLIANCE DEFENSE FUND                BRIAN W. RAUM, ESQ.
Attorneys for Plaintiff
15100 N. 90th Street
Scottsdale, AZ 85260


ALLIANCE DEFENSE FUND                JAMES M. JOHNSON, ESQ.
Attorneys for Plaintiff
401 Market Street, Suite 900
Shreveport, LA 71101


ALLIANCE DEFENSE FUND                JEFFREY A. SHAFER, ESQ.
Attorneys for Plaintiff
801 G Street NW, Suite 509
Washington, D.C. 20001

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Barbara J. Fiala, as current Commissioner of the New York State Department of Motor Vehicles, is substituted for David. J. Swartz.

TRAINOR & CUTLER, LLP                    JAMES P. TRAINOR, ESQ.
Attorneys for Plaintiff
2 Memphis Place, Suite 153
Malta, New York 12020


HARRIS BEACH PLLC                        MARK J. MCCARTHY, ESQ.
Attorneys for Raymond Martinez
677 Broadway, Suite 1101
Albany, NY 12207


HON. ERIC T. SCHEIDERMAN,                SENTA B. SIUDA, ESQ.
  Attorney General for the State of      Assistant Attorney General
  New York
Attorney for Barbara J. Fiala
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204-2455


Neal P. McCurn, Senior District Judge


### MEMORANDUM, DECISION AND ORDER

## I.  Introduction

Like many other states, New York operates a program that allows vehicle owners to display specialty license plates which bear a specific message or symbol. In this civil rights action, the plaintiff, the Children First Foundation, Inc. ("CFF"), challenges the denial of its  application for a specialty plate by defendants, the former and current commissioners of the New York Department of Motor Vehicles ("DMV").  CFF sues Raymond Martinez ("Martinez"), the former commissioner, in his individual capacity and sues Barbara J. Fiala ("Fiala"), the current commissioner, solely in her official capacity (collectively, "Defendants").  CFF argues primarily that Defendants violated its rights under the Free Speech Clause

of the First Amendment to the United States Constitution, but also asserts claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.  Presently before the court are motions for summary judgment by each party.  Decision is rendered solely on the papers submitted, without oral argument.  Because the court concludes that defendants violated CFF's First Amendment free speech rights as a matter of law, it need not address either of CFF's Fourteenth Amendment claims.  Also, because Martinez prevails on his affirmative defense of qualified immunity, CFF's individual capacity claims against him are dismissed.

## II.  Procedural Background

Familiarity with much of the procedural background of this case is presumed, but will be summarized here for purposes of clarity.

This action was originally commenced in August 2004.  The defendants subsequently filed a pre-answer motion to dismiss the entire complaint.  After hearing oral argument regarding the motion, this court issued a bench order granting the motion in part, based on stipulation by plaintiffs, and denying the motion in part.

Thereafter, defendants filed both a motion for reconsideration with this court and an appeal of this court's decision on the motion to dismiss with the Court of Appeals for the Second Circuit.  The sole issue on reconsideration and appeal was this court's denial of qualified immunity.  This court denied defendants' motion for reconsideration, noting that they failed to overcome the "formidable hurdle" faced by movants seeking dismissal on qualified immunity grounds via a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Dkt. No. 31. Shortly thereafter, defendants appealed the denial of their

2

reconsideration to the Court of Appeals for the Second Circuit.

The Second Circuit dismissed both appeals by summary order, finding that because facts supporting the defense of qualified immunity do not appear on the face of the complaint, said defense cannot be determined as a matter of law, and therefore, the court lacks appellate jurisdiction. See <u>Children First Found., Inc. v. Martinez</u>, 169 Fed. App'x. 637, 639 (2d Cir. 2006).  Defendants' appeals were dismissed accordingly.

A few months later, after stipulation by all parties, plaintiffs amended their complaint to comport with this court's ruling on the Rule 12(b)(6) motion.  Shortly after CFF amended its complaint, defendants collectively filed an answer.  At some point within the following six months, one of the defendants made a motion to amend her answer, which was granted in part and denied in part by Magistrate Judge Randolph F. Treece, <u>see</u> <u>Children First Found., Inc. v. Martinez</u>, 631 F. Supp. 2d 159 (N.D.N.Y. 2007), and later, upon objection of the parties, reversed by this court, <u>see</u> <u>Children First Found., Inc. v. Martinez</u>, No. 1:04-cv-0927, 2007 WL 4618524, at *1-3 (N.D.N.Y. Dec. 27, 2007).  Interlocutory appeal was requested, and denied.  <u>See</u> <u>Children First Found., Inc. v. Martinez</u>, No. 1:04-cv-0927, 2008 WL 2557433 (N.D.N.Y. June 20, 2008).

The parties eventually stipulated to the dismissal of all defendants except Martinez and Fiala.  Subsequently, the presently pending motions for summary judgment were filed.

### *III.  Factual Background*

The relevant facts are not in dispute.  Accordingly, there are no material questions of fact to prevent summary judgment here.  CFF is a non-profit organization, incorporated in New York State, that exists to raise funds and

awareness to promote and support adoption as a positive choice for women with unwanted pregnancies or newborns in New York, New Jersey, and Connecticut. CFF restricts its donations to non-profit organizations that receive no government funding, provide services to pregnant women, and do not perform or refer for abortion.  In December 2001, CFF, through its director and president, Dr. Elizabeth Rex ("Rex"), applied for a custom plate through the DMV's specialty plate program, which was later denied.  Martinez was the commissioner of DMV at that time.

New York State law enables the commissioner of the DMV ("the Commissioner") to issue special number (or "custom") license plates for an additional fee, and to promulgate regulations in relation thereto.  N.Y. VEH. & TRAF. LAW § 404(1) (McKinney 2009).  The Commissioner shall not issue any special number plate that, among other things, "is, [in his or her discretion,] obscene, lewd, lascivious, derogatory to a particular ethnic or other group, or patently offensive."  N.Y. COMP. CODES R. & REGS. tit. 15, § 16.4 (2001).  One category of special number plates is referred to by the DMV as a "Picture Plate" and is defined as "a vehicle plate that has the words 'New York' contained in a blue banner, and a picture or logo next to the plate number."  There are several categories and sub-categories of custom plates,[2] some of which are authorized by legislative action.  See §§ 404-b through 404-w.  Otherwise, the procedure for the application for and issuance of a custom plate is purely within the discretion of the

---

[2] At the time of CFF's application for a special number plate, these categories included Sports Teams and NASCAR; Organizations and Causes; Professions; Emergency Services; Counties and Regions of New York State; Colleges, Fraternities and Sororities; and Military and Veterans.

4

Commissioner and is not governed by statute or regulation.  According to the DMV's website at the time of CFF's application for a custom plate, there are certain pre-requisites to applying for a custom plate: (1) an organization must be not-for-profit and registered with the New York State Department of State; (2) it must have a sponsoring agency or organization as the main point of contact; and (3) it must pay a $5000 deposit and sign a memorandum of understanding with the DMV that the deposit is refunded when two hundred sets of the plate are sold within a three-year period.[3]  An organization can request a "custom plate development kit" from the DMV, which includes information and the required forms.

Ostensibly, a request was made for such a "development kit" because on September 6, 2001, a DMV employee sent Rex a letter and packet of information that presented the requisite form and content of an application for a new custom plate, including administrative details with respect to marketing, submission of artwork, means of payment, and other matters.  On December 28, 2001, Rex, on behalf of CFF, submitted an application for a custom plate to DMV.  CFF's application included proposed artwork and design for the custom plate, which reflects the corporate logo of Choose Life, Inc.:[4]  "a yellow sun behind the faces of two smiling children that are drawn as if in crayon by a child."  Am. Compl. ¶ 33a. The plate design also included the tag line, "Choose Life," which also appears as if

---

[3] Effective August 2, 2004, the DMV temporarily suspended consideration and approval of requests for creation of new custom plate series.

[4] Choose Life, Inc. ("CLI") is an organization that is incorporated in the State of Florida and that has assisted individuals and organizations in 49 states regarding applications for "Choose Life" license plates.  CLI gave CFF permission to use its trademarked and copyrighted logo for CFF's specialty plate application in New York State.

drawn in crayon by a child.  Two months later, Martinez denied CFF's application, citing the denial of a request for a similar "Choose Life" plate by the DMV in 1998.  The 1998 Choose Life plate was denied by DMV's then commissioner Richard E. Jackson, Jr., citing "the State of New York's policy not to promote or display politically sensitive messages" on its license plates due to the potential for "road rage."  Ex. W to Decl. of Jeffrey A. Shafer, Jan. 25, 2010, Dkt. No. 203-2 ("Shafer Decl.").

Thereafter, CFF's legal counsel contacted Martinez by letter, wherein he argued that the DMV's stated reason for the denial of CFF's custom plate application constitutes impermissible viewpoint discrimination through Martinez's unbridled discretion.  In reply by letter on June 10, 2002, Deputy Commissioner and Counselor Jill A. Dunn ("Dunn") stated that CFF's application was rejected "on the grounds that the requested custom plate series is inconsistent with [the DMV's] regulations in that the message is patently offensive and could provoke outrage from members of the public."  Ex. E to Shafer Decl., Dkt. No. 206-2. Dunn went on to explain that

> despite CFF's laudable goals and purposes, the message chosen to convey them, as indicated in the application, is subject to varying interpretations as best, and may even be misleading.  We believe that the phrase "Choose Life" is more commonly associated with the abortion rights debate than it is with the promotion and funding of adoption.  The [DMV's] issuance of a "Choose Life" custom plate series would readily be perceived as governmental support for one side of a controversy that has existed in this country for several decades.

Id.  Dunn next explained the merits of the DMV's concern about road rage, noting that "[t]here is, quite clearly, a significant segment of the population that finds such

plates to be 'patently offensive.'"  Id.  Dunn concluded by stating that the DMV's "decision is not based on the content of the proposed speech, but instead is intended to preserve viewpoint neutrality by insuring that plates issued by the State do not present or support either side of this issue, or any other political, religious or social issue that has proven to be so contentious and divisive."  Id. (emphasis in original).

In October 2003, CFF submitted a revised custom plate design that included a  change in the tag line from "Choose Life" to "FUND-ADOPTION.ORG."   The revised plate also included a smaller version of CFF's corporate logo, with the faces of two smiling children that are drawn as if in crayon by a child and the phrase, "Choose Life," as if drawn in crayon by a child, directly underneath.  Ex. N to Shafer Decl., Dkt. No. 206.  In February 2004, after receiving a follow-up telephone message from Rex regarding the status of CFF's revised plate, Martinez notified Rex by letter that the revised plate design was being reviewed and considered.

On March 31, 2004, Martinez wrote to Rex to inform her that the DMV was adhering to its earlier denial of CFF's plate application.  Martinez incorporated by reference and attached Dunn's June 10, 2002 letter explaining the legal basis and rationale for the DMV's decision.  Regarding the DMV's consideration of CFF's proposed plate design revision, Martinez noted that included in CFF's packet of information in support of the revision is the acknowledgment that "the phrase 'Choose Life,' rather than 'Choose Adoption' or 'Support Adoption' is more appealing to [CFF] *specifically* because it appeals to pro-life and anti-death penalty supporters."  Ex. GG to Shafer Decl., Dkt. No. 207 (emphasis in original).  Accordingly, Martinez added, he interprets that acknowledgment to state that "the

7

proposed plate design is, in fact, intended to draw attention to the very political, social and religious issues that were addressed in [Dunn's] June 2002 letter." Id. Martinez went on to explain that "in issuing a special plate, control over the design, marketing and issuance of any custom plate series is solely within [the discretion of the Commissioner of DMV], unless otherwise directed by State law." Id.

On July 26, 2004, CFF again proposed an updated custom plate design with its corporate logo and domain name, "SafeHavens-Adoption.org" or alternatively, "NYChoose-Life.org" as the tag line. One week later, Dunn notified CFF that Martinez suspended the custom plate program, and therefore CFF had no application that was ripe for consideration. On August 4, 2004, CFF initiated the present action.

## IV.   Discussion

### A.  Legal Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden to show the court why it is entitled to summary judgment. See Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986)). If the movant meets its burden, the burden shifts to the non-movant to identify evidence in the record that creates a genuine issue of material fact. See id., at 273 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)).

When the court is deciding a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir.

8

2004) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598 (1970)).  Where, as here, a court is considering cross-motions for summary judgment, each party's motion must be evaluated "on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  Byrne v. Rutledge, 623 F.3d 46, 53 (2d Cir. 2010) (quotation and citation omitted).

### B.  42 U.S.C. § 1983

In order to establish a claim pursuant to 42 U.S.C. § 1983, a plaintiff must show "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state ... law."  Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920 (1980) (internal quotations omitted)).  "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689 (1979)).

### 1.  Freedom of Speech

The Free Speech Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. CONST. amend. I.  The Free Speech Clause restricts government regulation of private, not government, speech.  See Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 467, 129 S. Ct. 1125, 1131 (2009) (citations omitted).  However, "[i]t is well established that 'the government need not permit all forms of speech on property that it owns and controls.'"  Perry v. McDonald, 280 F.3d 159, 166 (2d Cir. 2001) (quoting International Soc'y for Krishna Consciousness, Inc. v.

Lee, 505 U.S. 672, 678, 112 S. Ct. 2701 (1992)).  Here, the parties agree that the speech at issue in this case is private speech[5] and that New York license plates are government property.  In evaluating government regulations of private speech on government property, "the Supreme Court has identified three categories of forums—the traditional public forum, the designated public forum, and the nonpublic forum—and has developed a body of law styled 'forum analysis.'" Perry, 280 F.3d at 166 (citing Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 802, 105 S. Ct. 3439 (1985); Perry Educ. Ass'n v. Perry Local Educ. Ass'n, 460 U.S. 37, 45, 103 S. Ct. 948 (1983)).

In a traditional public forum, speakers can be excluded "only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest."  Cornelius, 473 U.S. at 800, 105 S. Ct. at 3448.  Strict scrutiny also applies when speech is excluded from a designated public forum.  See id.  Such a forum is created "when the government has intentionally designated a place or means of communication as a public forum." Id.[6]  In a nonpublic forum, however, speech may be restricted "as long as the restrictions are reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view."  Id. (quotation and citation

---

[5] While Defendants argue that the speech involved here is in part government speech and in part private speech, they agree that as long as at least some private speech is involved, a forum analysis is required.  See Perry v. McDonald, 280 F.3d 159, 166-67 (2d Cir. 2001).

[6] The Supreme Court has recognized a subset of the designated public forum, called the limited public forum, wherein restrictions that are viewpoint neutral and reasonable do not violate the First Amendment.  See Perry Education Assn. v. Perry Local Educators' Assn., 460 U.S. 37, 46-47, 103 S. Ct. 948, 955-56 (1983).  See also Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez, — U.S. —, — , 130 S. Ct. 2971, 2984 (2010).

omitted).  In other words, a restriction on speech in a nonpublic forum will be upheld so long as it is reasonable and viewpoint neutral.  See Byrne, 623 F.3d at 53 (citing Cornelius, 473 U.S. at 800).

In support of their motion for summary judgment, Defendants[7] argue that the custom plate program at issue here is a nonpublic forum, and that the denial of CFF's plate application was a permissible content based restriction that was both viewpoint neutral and reasonable, and therefore did not violate CFF's free speech rights.  In opposition, CFF argues that Defendants' restriction was both viewpoint discrimination and unreasonable and therefore, unconstitutional in any forum.  Also, CFF argues, because the forum here is actually a designated public forum, Defendants' purported content based exclusion is unconstitutional.

The parties essentially submit these same arguments regarding CFF's motion for summary judgment, except in support of its motion, CFF makes the argument regarding the level of scrutiny to be applied in a designated public forum, which is that there is no compelling state interest in censoring private speakers presenting a "choose life" viewpoint in a forum the state has opened to such speakers for the purpose of expressing viewpoints.  CFF also argues in support of its motion that Defendants' restriction of their plate application was an unconstitutional exercise of unbridled discretion to deny its plate application based on viewpoint.

### *a.  Forum Analysis*

Because the parties agree, and the record supports the conclusion that the speech here is private, not government, speech, the next step is to conduct a forum

---

[7] Although Martinez seeks summary judgment on the basis of qualified immunity, he adopts the arguments set forth by Fiala in her motion, opposition and reply papers.

analysis in order to determine the level of scrutiny to be applied to Defendants'
denial of CFF's plate application.  Initially, the issue of defining the relevant forum
must be resolved.  Defendants argue that the forum is custom license plates in New
York State, while CFF argues the forum is limited to the empty spaces on those
license plates that the State makes available for private messages.  To be sure,
courts that have analyzed First Amendment challenges regarding messages on
special or custom license plates have either explicitly concluded, or presumed it to
be, that as Defendants argue here, the forum is the license plate program or the
license plate itself.  See, e.g., Roach v. Stouffer, 560 F.3d 860, 868 (8th Cir. 2009);
Choose Life Illinois, Inc. v. White, 547 F.3d 853, 864 (7th Cir. 2008), cert. denied,
130 S. Ct. 59 (2009); Arizona Life Coalition, Inc. v. Stanton, 515 F.3d 956, 968
(9th Cir. 2008), cert. denied, 129 S. Ct. 56 (2008); Planned Parenthood of S.C. v.
Rose, 361 F.3d 786, 795 (4th Cir. 2004), cert. denied, 125 S. Ct. 1036, (2005);
Sons of Confederate Veterans, Inc. v. Comm'r of VA Dep't of Motor Vehicles,
288 F.3d 610, 625 (4th Cir. 2002), reh'g en banc denied, 305 F.3d 241 (4th Cir.
2002).  CFF cites no legal authority to support its argument seeking a limited
definition of the forum beyond that which many other courts have found.
Moreover, a conclusion that the forum here is, as Defendants argue, New York's
custom plate program, does not prejudice CFF.  Therefore, the court concludes, in
accordance with the aforementioned caselaw, that the forum at issue here is New
York's custom license plate program.

Next, it is necessary to determine whether New York's custom license plates
are a traditional public, designated public, or nonpublic forum.  "A traditional
public forum is property, such as a public street or a park, that 'by long tradition or
by government fiat ... ha[s] been devoted to assembly and debate.'"  Perry, 280

12

F.3d at 166 (citing Perry Educ. Ass'n, 460 U.S. at 45, 103 S. Ct. 948).  Clearly, by this definition, New York's custom license plate program is not a traditional public forum.  Moreover, none of the courts dealing with First Amendment challenges to private messages on license plates have found that license plates are a traditional public forum.  Instead, most courts have found the forum to be a nonpublic forum or a limited public forum.  See, e.g., Choose Life Illinois, Inc., 547 F.3d at 864-65 (nonpublic forum); Arizona Life Coalition, 515 F.3d at 968-71 (limited public forum); Planned Parenthood of S.C., 361 F.3d at 798 (limited public forum).  In any event, the parties in this case do not argue that New York's custom license plate program is a traditional public forum.  Instead, Defendants argue that New York's custom plate program is a nonpublic forum and CFF argues it is a designated public forum.

The Court of Appeals for the Second Circuit has twice found license plates, albeit "vanity" license plates, to constitute a nonpublic forum.  See Byrne, 623 F.3d at 53-54; Perry, 280 F.3d at 167-169.  In Perry, the court considered five factors before concluding that vanity plates in the State of Vermont are a nonpublic forum as opposed to a designated public forum: (1) Vermont's stated policy in issuing license plates is vehicle identification; (2) Vermont's vanity license plates serve the purpose of raising revenue; (3) the expressive activity on Vermont's vanity plates is subject to numerous restrictions; (4) the general public does not have unimpeded access to Vermont license plates; and (5) vanity plates are a "highly limited and extremely constrained means of expression" because they are "physically restricted by size and shape and by the state's interests, including that of vehicle identification."  Id.  To be sure, New York's custom license plates are arguably different than vanity plates, albeit in limited respects.  However, other

13

courts have conducted forum analyses of similar custom license plate programs, which this court finds instructive.

The Court of Appeals for the Seventh Circuit has concluded, based on factors similar to those considered by the court in <u>Perry</u>, that the specialty license plate program in the State of Illinois is not a designated public forum, but a nonpublic forum.  <u>See</u> <u>Choose Life Illinois</u>, 547 F.3d at 865.  Specifically, the court found that "[l]icense plates in Illinois, as elsewhere, are heavily regulated by policy and practice. [citation omitted.]  Their primary purpose is to identify the vehicle, not to facilitate the free exchange of ideas.  License plates are not by nature compatible with anything more than an extremely limited amount of expressive activity."  In contrast, the Court of Appeals for the Ninth Circuit concluded that Arizona's special license plate program was a limited public forum. <u>See</u> <u>Arizona Life Coalition</u>, 515 F.3d at 969-71.  Noting that "the designated and limited public forum classifications have been the source of much confusion," the court explained that "[a] limited public forum exists when the government intentionally opens up a nonpublic forum to expressive activity by a certain class of speakers to address a particular class of topics."  <u>Id.</u>, at 969 (internal quotation and citation omitted).  The court concluded that because Arizona opened up its special license plate program to a certain class of organizations, subject to numerous restrictions, with the general public having only limited access, the program is a limited public forum.  <u>Id.</u>, at 969-971.

Here, CFF argues that New York's custom plate program is a designated public forum because the DMV has designed and operated a program that made and makes available special license plates, which are the channel of communication, that bear the logo and tag line which advertise for certain

speakers, to wit, eligible participants and vehicle owners.  CFF contends that the DMV has imposed no substantive restrictions on access to the custom plate program outside of stylistic and other factors unrelated to message.  See Pl.'s Mem. of Law in Opp'n to Fiala's Mot. for Summ. J., at 17-18, Dkt. No. 213 (citing Cornelius, 473 U.S. at 802, 105 S. Ct. 3439).

"A designated public forum is created by purposeful governmental action—that is, when the government 'intentionally open[s] a nontraditional forum for public discourse.'"  Perry, 280 F.3d at 166 (quoting Cornelius, 473 U.S. at 802, 105 S. Ct. 3439).  By Supreme Court definition, a designated forum exists when the government designates "a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects."  Cornelius, 473 U.S. 802, 105 S. Ct. 3439.  Because such a forum is not created by government inaction or by the government permitting limited discourse, courts must look to "the policy and practice of the government" as well as "the nature of the property and its compatibility with expressive activity" in order to determine "whether [the government] intended to designate a place not traditionally open to assembly and debate as a public forum."  Id.  That expressive activity occurs in the context of the forum does not imply that the forum becomes a public forum for First Amendment purposes.  Id., at 805, 105 S. Ct. 3439.  Instead, it is the government's intent that controls.

In Cornelius, the Supreme Court found that the federal government's Combined Federal Campaign ("CFC") is a nonpublic forum, noting the government did not create the CFC for expressive activity and the government has wide discretion to limit access to the CFC in order to avoid interruptions to the performance of the duties of its employees.  See id., at 805-806, 105 S. Ct. 3439.

15

In doing so, it distinguished its previous cases where it found the government to have designated its property as a public forum.  Id., at 802-803, 105 S. Ct. 3439 (citing Widmar v. Vincent, 454 U.S. 263, 267, 102 S. Ct. 269 (1981) (where a state university had an express policy of making its meeting facilities available to registered student groups); Madison Joint School District v. Wisconsin Employment Relations Comm's, 429 U.S. 167, 174 n.6, 97 S. Ct. 421 (1976) (where a state law provided for open school board meetings); Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 555, 95 S. Ct. 1239 (1975) (where a municipal auditorium and a city-leased theater were designed for, and dedicated to expressive activities).

CFF's argument that New York designated its custom plate program as a public forum is inconsistent with the relevant legal authority.  Here, while New York arguably opened up its custom plate program to a class of organizations, it did not give the general public open access.  See R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist., 645 F.3d 533, 540 (2d Cir. 2011) (stating that a designated forum exists where government permits "indiscriminate use by the general public") (quoting Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 267, 108 S. Ct. 562 (1988)).  See also Hotel Emps. & Rest. Emps. Union Local 100 v. N.Y.C. Dep't of Parks & Recreation, 311 F.3d 534, 545 (2d Cir. 2002) (stating that a designated public forum is one intentionally "opened for all types of expressive activity").  Thus, by definition, New York's custom plate program is not a designated public forum.

To be sure, it is arguable that New York created a limited public forum, as the Ninth Circuit found in Arizona Life Coalition.  See id., 515 F.3d at 969-71.  In contrast to a designated public forum, "a limited public forum is created when the

16

state 'opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects.'" R.O. ex rel. Ochshorn, 645 F.3d at 539 (quoting Hotel Emps. & Rest. Emps. Union Local 100, 311 F.3d at 545).  However, the court need not decide whether New York's custom plate program is a limited public or nonpublic forum, because in both forums, government restrictions on speech are permissible if they are reasonable and viewpoint neutral.  See Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez — U.S. —, —, n.11, 130 S. Ct. 2971, 2984-85 (2010) ("in [a limited public] forum, a governmental entity may impose restrictions on speech that are reasonable and viewpoint-neutral") (quoting Pleasant Grove City, 555 U.S. at 470, 129 S. Ct. 1125).[8]

_____

[8] CFF points out that the Court of Appeals for the Second Circuit has held that in a limited public forum, strict scrutiny applies to restrictions on speech that fall within the category for which the forum has been opened.  See Pl.'s Mem. of Law in Opp'n to Fiala's Mot. for Summ. J. at 20 (citing Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 143 n.4 (2d Cir. 2004).  Not surprisingly, CFF makes the argument that even if the court finds that New York's custom plate program is a limited public forum, strict scrutiny should apply, requiring the court to decide whether Defendants' denial of CFF's plate application was necessary to serve a compelling state interest and narrowly drawn to achieve that interest.  To be sure, the Second Circuit has previously found that in a limited public forum, strict scrutiny may apply depending on whether restrictions on speech fall within the category for which the forum has been opened.  See Hotel Emps. & Rest. Emps. Union Local 100 v. N.Y.C. Dep't of Parks & Recreation, 311 F.3d 534, 545-46 (2d Cir. 2002) (citing Travis v. Owego-Apalachin Sch. Dist., 927 F.2d 688, 692 (2d Cir.1991); Fighting Finest, Inc. v. Bratton, 95 F.3d 224, 229 (2d Cir.1996)).  In other cases, however, the court has found that restrictions in limited public fora are permissible if reasonable and viewpoint neutral.  See R.O. ex rel. Ochshorn, 645 F.3d at 540 (citing Peck v. Baldwinsville Cent. Sch. Dist., 426 F.3d 617, 626 (2d Cir. 2005)); Byrne, 623 F.3d at 54, n.8 (citing Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106-07, 121 S. Ct. 2093 (2001); Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829, 115 S. Ct. 2510 (1995)); General Media Commc'ns, Inc. v. Cohen, 131 F.3d 273, 278, n.6 (2d Cir. 1997).  While the court has recognized the incongruity between these rulings, it has not yet resolved the issue.  See Byrne, 623 F.3d at 54, n.8; Make the Road by Walking, Inc., 378 F.3d at 143, n.4.  In any event, the Supreme Court has repeatedly concluded that restrictions in a limited public forum are permissible if they are reasonable and viewpoint neutral.  See Christian Legal Soc'y, — U.S. at

### *b.  Viewpoint Neutrality and Reasonableness*

Defendants' denial of CFF's plate application will be deemed constitutional if it was both viewpoint neutral and reasonable.  Defendants argue their denial was a permissible content-based restriction that was both viewpoint neutral and reasonable, while CFF argues their denial was not content-based, but was instead unreasonable viewpoint discrimination.  CFF argues in the alternative that New York's statutory and regulatory scheme is unconstitutional because it allowed Defendants unbridled discretion to engage in viewpoint discrimination.

Defendants argue, citing Choose Life Illinois for support, that they permissibly denied CFF's plate application pursuant to DMV's policy to exclude the entire subject of abortion from New York's custom license plate program.  See id., 547 F.3d at 865.  According to Defendants, the record reflects that "denying [CFF's] 'Choose Life' custom plate was clearly an effort to avoid any appearance of favoring either side of the abortion debate and to maintain viewpoint neutrality on this contentious issue."  Defs.' Mem. of Law on Opp'n to Pl.'s Mot. for Summ. J. at 9, Dkt. No. 217-2.  See also Defs.' Mem. of Law in Support of Mot. for Summ. J. at 13, Dkt. No. 198-4.  Defendants cite Cornelius for support, where the court concluded that the federal government did not violate the First Amendment when it limited participation in the CFC "to avoid the appearance of political favoritism without regard to the viewpoint of the excluded groups."  Id., 473 U.S. at 813, 105 S. Ct. 3439.

---

—, n.11, 130 S. Ct. at 2984-85; Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 129 S. Ct. 1125, 1131 (2009); Good News Club, 533 U.S. at 106-07, 121 S. Ct. 2093; Rosenberger, 515 U.S. at 829, 115 S. Ct.  2510; Perry Education Assn., 460 U.S. at 46-47, 103 S. Ct. 948.  Accordingly, the court need not address CFF's argument that strict scrutiny should apply.

CFF disputes Defendants' characterization of their denial as content based, arguing instead that Defendants' intent to deny participation in New York's custom plate program to groups that have a controversial or divisive message is viewpoint discrimination.  See Pl.'s Mem. of Law in Support of Mot. for Summ J. at 11, Dkt. No. 203-1 (citing Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist., 386 F.3d 514, 527 (3d Cir. 2004)).  See also Pl.'s Mem. of f Law in Opp'n to Defs.' Mot. for Summ J. at 8, Dkt. No. 213.  CFF also cites Arizona Life Coalition for support, noting that the Ninth Circuit there dismissed a similar argument in favor of its finding of viewpoint discrimination.  Moreover, CFF argues, there is no evidence that the DMV had a policy to restrict the entire subject of abortion that was in existence at the time of CFF's application for a custom license plate.

"As the Supreme Court has noted, the distinction between content and viewpoint discrimination 'is not a precise one.'"  General Media Commc'ns, Inc. v. Cohen, 131 F.3d 273, 281 (2d Cir. 1997) (quoting Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 831, 115 S. Ct. 2510, 2517-18 (1995).  The Court in Rosenberger explained the distinction as "between, on the one hand, content discrimination, which may be permissible if it preserves the purposes of that limited forum, and, on the other hand, viewpoint discrimination, which is presumed impermissible when directed against speech otherwise within the forum's limitations."  Rosenberger, at 830-31 (citing Perry Educ. Ass'n, 460 U.S. at 46, 103 S. Ct. at 955).

The Court of Appeals for the Seventh Circuit and the Court of Appeals for the Ninth Circuit have each relied on Rosenberger to decide the same issue here, whether the government's denial of a "Choose Life" custom or specialty plate is content discrimination or viewpoint discrimination. In Choose Life Illinois, the

Seventh Circuit found the government's restriction was a permissible content based restriction, while in Arizona Life Coalition the Ninth Circuit found the restriction was impermissible viewpoint discrimination.  Accordingly, discussion of each of these cases is warranted.

In Arizona Life Coalition, the Arizona License Plate Commission ("the Commission") denied an application for a "Choose Life" license plate after "[m]embers of the Commission raised concerns over whether the general public would believe Arizona had endorsed the message of the 'Choose Life' license plate, as well as concerns over whether groups with differing viewpoints would file applications."  Id., 515 F.3d at 956.  The statute governing the issuance of special organization license plates in Arizona requires that the license plate "cannot promote a specific product for sale, or a specific religion, faith or antireligious belief."  Id., at 972.  While the statute does not "create objective criteria for limiting 'controversial' material, . . . [nor does it] prohibit speech related to abortion," id., at 972, it does require that "the primary activity or interest of the organization . . . is not offensive or discriminatory in its purpose, nature, activity or name," id., at 961 (quoting ARIZ. REV. STAT. ANN. § 28-2404(B)).

In rejecting the Commission's argument that it did not engage in viewpoint discrimination because, similar to Defendants' argument here, it did not grant a special organization plate to a group with an opposing viewpoint and therefore, neither side of the "Choose Life" issue is represented by a special organization plate, the Ninth Circuit relied upon the Supreme Court's rejection of "a similar argument in Rosenberger."  Arizona Life Coalition, 515 F.3d at 971 (citing Rosenberger, 515 U.S. at 823, 115 S. Ct. 2510.  There, the Court "found a First Amendment violation when a public university withheld funding to a student

20

publication because its paper primarily promoted or manifested a particular belief

in or about a deity or an ultimate reality." Id. (internal quotations omitted).  The

dissent disagreed, concluding that there was no viewpoint discrimination because

the university limited all religious speech, both theistic and atheistic.  See

Rosenberger, 515 U.S. at 831, 115 S. Ct. 2510.  In rejecting this argument, the

five-justice majority explained:

> The dissent's assertion that no viewpoint discrimination
> occurs because the Guidelines discriminate against an
> entire class of viewpoints reflects an insupportable
> assumption that all debate is bipolar and that antireligious
> speech is the only response to religious speech.  Our
> understanding of the complex and multifaceted nature of
> public discourse has not embraced such a contrived
> description of the marketplace of ideas.  If the topic of
> debate is, for example, racism, then exclusion of several
> views on that problem is just as offensive to the First
> Amendment as exclusion of only one.  It is as objectionable
> to exclude both a theistic and an atheistic perspective on the
> debate as it is to exclude one, the other, or yet another
> political, economic, or social viewpoint.

Arizona Life Coalition, at 971 (quoting Rosenberger, at 831, 115 S. Ct. 2510).  The

Ninth Circuit noted that unlike the university's guidelines in Rosenberger, the

Arizona statutes do not expressly prohibit abortion-related speech, but instead open

the license plate forum to "all organizations that serve the community and

contribute to the welfare of others in a nondiscriminatory way."  Id., at 971-72,

(citing ARIZ. REV. STAT. ANN. § 28-2404(B)).  The only justification the

Commission can give for denying Life Coalition's plate application was that it

chose not to enter the Choose Life/Pro-Choice debate, and therefore, the Ninth

Circuit held, it engaged in viewpoint discrimination.  Id. (citing Sammartano v.

21

<u>First Judicial Dist. Court,</u> 303 F.3d 959, 971 (9th Cir. 2002) ("where the government is plainly motivated by the nature of the message rather than the limitations of the forum or a specific risk within that forum, it is regulating a viewpoint rather than a subject matter")).  Moreover, the Ninth Circuit found, the Commission's concern that other organizations would seek to express opposing views is also "a clear form of viewpoint discrimination." <u>Id.</u>, at 972. The court further noted that "[r]estrictions based on community standards of decency must be based on objective criteria set out in advance." <u>Id.</u> (internal citation and quotation omitted).

In <u>Choose Life Illinois</u>, a non-profit organization, Choose Life Illinois ("CLI"), applied to the Illinois Secretary of State ("the Secretary"), in accordance with the basic statutory requirements for obtaining a specialty license plate, seeking issuance of a license plate bearing the words, "Choose Life." <u>See id.</u>, 547 F.3d at 857.  With "insignificant historical exceptions," each of the sixty specialty license plates available for purchase in Illinois at that time had its own authorizing statute. <u>Id.</u> at 856.  The Secretary informed CLI that it could not issue a license plate without approval by the legislature, and thereafter, CLI's attempts for such approval failed.  CLI filed suit arguing, among other things, that the Secretary and/or the legislature's failure to allow its plate application amounted to viewpoint discrimination.  The district court granted summary judgment for CLI, and on appeal, the Court of Appeals for the Seventh Circuit reversed.

The Seventh Circuit found that Illinois "excluded the entire subject of abortion from its specialty-plate program[,]" which "is a content-based but viewpoint-neutral restriction[,]" distinguishing the Fourth Circuit's holdings in <u>Sons of Confederate Veterans</u> and <u>Rose</u> as well as the Ninth Circuit's holding in

Arizona Life Coalition.  Choose Life Illinois, Inc., 547 F.3d at 865 (citing Sons of Confederate Veterans, 288 F.3d 610; Rose, 361 F.3d 786; Arizona Life Coalition, 515 F.3d 956.  In Sons of Confederate Veterans, the Court of Appeals for the Fourth Circuit found viewpoint discrimination where the Virginia DMV excluded the Confederate flag from a specialty plate design because it was a "specific symbol commonly understood to represent a specific viewpoint."  Choose Life Illinois, 547 F.3d at 865, citing Sons of Confederate Veterans, 288 F.3d at 625-26. In Rose, where the State of South Carolina allowed a specialty plate bearing the "Choose Life" message but did not offer a license plate with an alternative "pro-choice" message, the Fourth Circuit concluded that the state was engaging in viewpoint discrimination because it was favoring one viewpoint on the subject of abortion over any other.  Id. (citing Rose, 361 F.3d at 795).  The Seventh Circuit concluded that in contrast to the state action in Sons of Confederate Veterans and Rose, the State of Illinois engaged in a content based but viewpoint neutral restriction because it excluded the entire subject of abortion.

The court then went on to explain in some detail its disagreement with the Ninth Circuit's conclusion in Arizona Life Coalition that the state of Arizona engaged in viewpoint discrimination.  Specifically, the Seventh Circuit stated that the passage from Rosenberger relied on by the Ninth Circuit actually undermines that court's conclusion.  See Choose Life Illinois, 547 F.3d at 866.  According to the Seventh Circuit

> excluding a faith-based publication from a speech forum *because* it is faith based is indeed viewpoint discrimination; where all other perspectives on the issues of the day are permitted, singling out the religious perspective for exclusion is discrimination based on viewpoint, not content.

23

> In contrast, here (and in [Arizona Life Coalition,] too), the State has effectively imposed a restriction on access to the specialty-plate forum based on subject matter: no plates on the topic of abortion.  It has not disfavored any particular perspective or favored one perspective over another on that subject; instead, the restriction is viewpoint neutral.

Id. (emphasis in original).

The Seventh Circuit fails to reconcile its conclusion with the Rosenberger Court's opinion that "exclusion of several views on [an issue] is just as offensive to the First Amendment as exclusion of only one."  Rosenberger, 515 U.S. at 831, 115 S. Ct. at 2510.  That is exactly what the Defendants did when they denied CFF's application for a "Choose Life" custom plate based on a policy to exclude the entire subject of abortion from New York's custom license plate program.  As the Ninth Circuit concluded in Arizona Life Coalition, in accordance with Rosenberger, the exclusion of the entire subject of abortion from the forum is not permissible content based discrimination, but is discrimination based on viewpoint, which runs afoul of the First Amendment.[9]

The remaining issue of whether Defendants' denial of CFF's plate

_____

[9] Notably, the Court of Appeals for the Second Circuit recently relied on Rosenberger in support of its conclusion that the State of Vermont's denial of an application for the vanity license plate "JN36TN" was impermissible viewpoint discrimination, but emphasized that its holding was limited to "the context of a ban on religious messages, an area in which the Supreme Court's guidance has been both extensive and clear."  Byrne, 623 F.3d at 59.  The court went on to explain that "[w]e neither question the state's ability to limit expression in a nonpublic forum to certain subject matters, nor disturb the prior holding of this Court that Vermont's related ban on 'scatological subjects' effects such a permissible viewpoint neutral and reasonable restriction."  Id. (citing Perry, 280 F.3d at 170).  Here, however, Rosenberger appears to direct the result, as the court in Arizona Life Coalition held, that the exclusion of viewpoints on an entire topic from a forum that, as here, has been opened by the state to non profit organizations for expression on a range of topics, is impermissible viewpoint discrimination.  See Arizona Life Coalition, 515 F.3d at 971-72.

application was reasonable "must be assessed in light of the purpose of the forum and all the surrounding circumstances," Cornelius, 473 U.S. at 809, 105 S. Ct. 3439, and "reflect a legitimate government concern," Perry, 280 F.3d at 169. Defendants argue that it was reasonable for the DMV to avoid being associated with one side of the very contentious and politically charged abortion debate, citing Cornelius for support. In Cornelius, the Court concluded that the federal government did not violate the First Amendment when it limited participation in the CFC "to avoid the appearance of political favoritism without regard to the viewpoint of the excluded groups." Id., 473 U.S. at 813, 105 S. Ct. 3439. Defendants also rely on Perry, for support of their argument that they acted reasonably. In Perry, the Second Circuit found that Vermont's revocation of a "SHTHPNS" vanity license plate was reasonably related to the State's interest in not communicating the message that it approves of the public display of scatological terms on its license plates. Id., 280 F.3d at 169. Moreover, Defendants argue, their denial of CFF's application did not prevent CFF from communicating its message in other ways, such as displaying a bumper sticker with a similar message, as the court found in Perry. See id., at 170.

CFF counters that the DMV intentionally opened up the custom license plate forum to diverse viewpoints and therefore, the denial of its plate application was unreasonable in light of the purpose of the forum. CFF argues that Cornelius is clearly distinguishable because there, the federal government excluded all politically oriented speakers from the CFC and more importantly, the Court there specifically found that the government did not create the CFC to provide a forum for expressive activity, unlike here. See Cornelius, 473 U.S. at 805. As for Perry, CFF correctly points out that the court there found that Vermont did not oppose the

25

plaintiff's viewpoint, but instead acted in support of a policy against profane utterances, which was appropriate under the First Amendment.  <u>See</u> <u>Perry</u>, 280 F.3d at 170.

In light of the purpose of New York's custom plate forum, Defendants' denial of CFF's plate application was unreasonable.  It is undisputed that CFF complied with the requirements for entry into the program: it is a non-profit organization that is incorporated in New York State; and it submitted its application for a "Choose Life" custom plate, including all of the requested information and documentation in accordance with DMV's requirements.  As this court has found, the sole basis for Defendants' denial of CFF's license plate application was viewpoint discrimination.  Accordingly, the court finds that Defendants' restriction was both discrimination based on viewpoint and unreasonable.

While this finding alone is sufficient to grant CFF's motion for summary judgment and deny Fiala's motion for summary judgment, the court will also address CFF's additional argument that Defendants' restriction of its plate application from New York's custom plate program was an unconstitutional exercise of unbridled discretion to deny its plate application based on viewpoint.

### *c.  Unbridled Discretion*

CFF argues that Defendants had unbridled discretion to engage in viewpoint discrimination, which is an independent ground for its Free Speech claim.

> A law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship.  This danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government

> official.  Without standards governing the exercise of discretion, a government official may decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker.

<u>Roach v. Stouffer</u>, 560 F.3d 860, 869 (8th Cir. 2009) (<u>quoting</u> <u>Lakewood v. Plain Dealer Publ'g Co.</u>, 486 U.S. 750, 763-64, 108 S. Ct. 2138 (1988)).  In <u>Roach</u>, the Court of Appeals for the Eighth Circuit found that the State of Missouri violated the First Amendment rights of plaintiffs, including the nonprofit organization, Choose Life of Missouri, Inc., because it gave unbridled discretion to the Joint Committee on Transportation Oversight ("Joint Committee") to engage in viewpoint discrimination.  There, the Missouri law which authorizes the Joint Committee to approve or deny specialty license plate applications, provides that

> [t]he [Joint Committee] shall also review for approval or denial all applications for the development of specialty license plates submitted to it by the department of revenue. The committee shall approve such application by a unanimous vote.  The committee shall not approve any application if the committee receives a signed petition from five house members or two senators that they are opposed to the approval of the proposed license plate.   The committee shall notify the director of the department of revenue upon approval or denial of an application for the development of a specialty plate.

<u>Id.</u>, at 862, 869-70 (<u>quoting</u> Mo. Rev. Stat. § 21.795(6)).  The court concluded that § 21.795(6) provides "no standards or guidelines whatsoever to limit the unbridled discretion of the Joint Committee[, and] [c]onsequently, the Joint Committee can deny an application for a specialty plate based solely on the organization's viewpoint."

Likewise, New York enables the Commissioner to issue special number

license plates for an additional fee, and to promulgate regulations in relation thereto.  See N.Y. VEH. & TRAF. LAW § 404(1).  The regulation governing the Commissioner's issuance of special number plates provides that he or she shall not issue any special number plate that, among other things, "is, [in his or her discretion,] obscene, lewd, lascivious, derogatory to a particular ethnic or other group, or patently offensive."  N.Y. COMP. CODES R. & REGS. tit. 15, § 16.4 (2001).  Otherwise, the procedure for the application for, and issuance of, a custom license plate in New York is purely within the discretion of the Commissioner and is not governed by statute or regulation.

It bears repeating that, as the Ninth Circuit noted in Arizona Life Coalition, "[r]estrictions based on community standards of decency must be based on objective criteria set out in advance."  Id., 515 F.3d at 972 (internal citation and quotation omitted).  No such objective criteria exist in New York.  As the court in Roach concluded regarding the Missouri statute, here New York gives unbridled discretion to the Commissioner to "decide who may speak and who may not based upon the content of the speech or viewpoint of the speaker . . . [w]ithout standards governing the exercise of discretion."  Lakewood, 486 U.S. at 763-64, 108 S. Ct. 2138.  Accordingly, New York has run afoul of the First Amendment by giving the Commissioner unbridled discretion to engage in viewpoint discrimination.  Thus, CFF prevails on its motion for summary judgment on this independent ground for its First Amendment claim.

Because CFF prevails on its First Amendment claim, the court need not address its claims pursuant to the Fourteenth Amendment's Equal Protection and Due Process Clauses.

### *C.  Qualified Immunity*

28

Finally, Martinez seeks summary judgment as to his affirmative defense of qualified immunity regarding his denial of CFF's custom plate application.

> [W]hen a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation.

Tracy, 623 F.3d at 95-96 (citing Gilles v. Repicky, 511 F.3d 239, 243-44 (2d Cir.2007); Saucier v. Katz, 533 U.S. 194, 208, 121 S. Ct. 2151 (2001) (modified by Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009)).  To determine if a right is clearly established, a court evaluates

> whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful. The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct. Moreover, when faced with a qualified immunity defense, a court should consider the specific scope and nature of a defendant's qualified immunity claim. That is, a determination of whether the right at issue was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. Thus, the qualified immunity analysis must be particularized in the sense that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the

28

light of pre-existing law the unlawfulness must be apparent.

Doninger v. Niehoff, 642 F.3d 334, 345–46 (2d Cir.2011) (citations and quotations omitted).  This inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  Pearson, 555 U.S. at 244 (quoting Wilson v. Layne, 526 U.S. 603, 614, 119 S. Ct. 1692 (1999) (internal quotation marks omitted)).

Based on the clearly established decisional law of the Supreme Court and the Second Circuit at the time Martinez acted, see African Trade & Info. Ctr., Inc. v. Abromaitis, 294 F.3d 355, 360 (2d Cir. 2002) (citing Shechter v. Comptroller of City of New York, 79 F.3d 265, 271 (2d Cir.1996)), he argues that it was objectively reasonable for him to deny CFF's custom plate application.  This court agrees.

Approximately four months prior to CFF's application for a custom license plate, the Court of Appeals for the Second Circuit issued its decision in Perry, wherein it held that the State of Vermont did not engage in viewpoint discrimination when it revoked a vanity license plate with the letters, "SHTHPNS" because it is offensive.  See Perry, 280 F.3d at 164, 170.  According to Perry, Vermont's policy of excluding scatological terms from its vanity license plates was both viewpoint neutral and reasonable, and therefore did not violate the plaintiff's First Amendment right to free speech.  See id. at 169-70.  Thus, at the time Martinez denied CFF's plate application, it was clearly established law in this Circuit that the DMV could deny an application for a special license plate as long as the decision to do so was reasonable and not based on the viewpoint of the speaker.  Accordingly, Martinez argues, it was objectively reasonable for him to deny CFF's plate application due to the desire to completely remove the State of

29

New York from the abortion debate.

CFF makes several arguments opposing Martinez's motion for summary judgment in this regard, all of which are based on its conclusion that Martinez's decision to deny CFF's plate application was viewpoint discrimination. While this court clearly agrees that Defendants here engaged in viewpoint discrimination, that is only the first step in analyzing the issue of whether Martinez is entitled to qualified immunity. Because, in light of the clearly established Second Circuit and Supreme Court law at the time of the denial of CFF's plate application, it was objectively reasonable for Martinez to believe that the denial was a permissible content-based but viewpoint neutral restriction, he is entitled to qualified immunity.

CFF argues that the Second Circuit Court of Appeals already decided that Martinez is not protected by qualified immunity when it dismissed Defendants' appeal of this court's denial of their Rule 12(b)(6) motion to dismiss the complaint based on qualified immunity grounds. See Children First Found., Inc. v. Martinez, 169 Fed. Appx. 637, 639, 2006 WL 544502, at *1(2d Cir. 2006). To be sure, the court, citing Perry, did state that "it is clearly established that, even in a nonpublic forum, restrictions on speech must be reasonable and viewpoint neutral." Id. (citing Perry, 280 F.3d at 169). However, the difference between viewpoint and content restrictions was not clearly established at the time Martinez denied CFF's plate application. In fact, the Supreme Court has acknowledged that "the distinction between content and viewpoint discrimination 'is not a precise one.'" General Media Commc'ns, Inc., 131 F.3d at 281 (quoting Rosenberger, 515 U.S. at 831, 115 S. Ct. 2510). Moreover, this court's decision that Defendants' denial of CFF's application for a custom licence plate was viewpoint discrimination and not

a content-based but viewpoint neutral restriction, was based on decisional law from outside of this circuit.  Thus, at the time Martinez denied CFF's plate application, he did so with the reasonable belief, in accordance with the decisional law of the Second Circuit and Supreme Court, that his denial was a content-based but viewpoint neutral restriction.  Accordingly, Martinez is entitled to qualified immunity and his motion for summary judgment is likewise granted.

## *V. Conclusion*

After due consideration of the arguments of the parties regarding the pending motions and in accordance with the foregoing discussion, it is ORDERED that the motion for summary judgment by defendant, Barbara J. Fiala, in her official capacity as Commissioner for the New York State Department of Motor Vehicles, see Dkt. No. 198, is DENIED; and it is further

ORDERED that the motion for summary judgment by defendant Raymond P. Martinez regarding his affirmative defense of qualified immunity, see Dkt. No. 197, is GRANTED; and it is further

ORDERED that the motion for summary judgment by plaintiff, Children First Foundation, Inc., see Dkt. No. 203, is GRANTED; and it is further

ORDERED that defendant Barbara J. Fiala, in her official capacity as Commissioner for the New York State Department of Motor Vehicles, as well as her agents, employees, officials and any other person acting in concert with her or on her behalf, shall approve plaintiff, Children First Foundation, Inc.'s preferred custom plate design application that was submitted prior to the institution of the moratorium on acceptance of new plate applications; and it is further

ORDERED that execution of Judgment in this action shall be stayed only for such time as is required for any party to file a timely Notice of Appeal in this

31

action, and should a Notice of Appeal be timely filed, execution of Judgment in this action shall continue to be stayed until resolution of that appeal.

The Clerk of the Court shall amend the caption in this action to reflect that Barbara J. Fiala is substituted as a defendant for David. J. Swartz pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and to reflect that Raymond P. Martinez has been terminated as a defendant to this action.


IT IS SO ORDERED.


DATED:     November 8, 2011
           Syracuse, New York

                          _____
                          Neal P. McCurn
                          Senior  U.S. District Judge

32